## SCAIFE v. CLIFTON et al.
### No. 1452.

Court of Appeal of Louisiana. First Circuit.
March 25, 1935.

Pujo, Bell & Hardin, of Lake Charles, for appellant.

Spearing & McClendon, of New Orleans, and Edwin F. Gayle and Robert R. Stone, both of Lake Charles, for appellees.

LE BLANC, Judge.

This is a suit for damages arising out of an automobile collision which took place about 1 mile south of the city limits of the city of Lake Charles on the evening of January 9, 1933. The site of the collision is at a point where a graveled road known as South street road is intersected by a shell road which leads to Prien Lake. South Street road is an important highway leading out of the city of Lake Charles towards the south. The intersecting road which runs east and west is a narrower and far less traveled road, and until a short time before this accident the surface was not even shelled.

The residence of Mr. Scaife, plaintiff in the case, is situated on the northeast corner that is formed by the intersection of these two roads. The gate, or one of the gates through which he enters his yard to go to his automobile garage, is on that line of his property on the north side of the shell road, and therefore coming to his home on the South Street road it is necessary for him to make a left-hand turn to the east into the shell road at the intersection.

On the evening of the accident, he was coming home from work in Lake Charles, where he is engaged in his trade as a barber, between 6:30 and 7 o'clock, and while in the act of making the turn into the shell road, his car, a Chrysler sedan, was run into by a Dodge coupé, owned and operated at the time by Robert Clifton, one of the defendants herein.

Clifton, who is a negro, works at the Lake Charles Country Club situated about 3 miles south or southwest of the place where the accident occurred. He has been working there for thirteen or fourteen years. His home is in the city of Lake Charles and he drives to and from his work in his automobile. On the evening of the accident, he left the Country Club at his usual knocking off hour, about 6:30. He stopped at his mother's who lives on the South Street road, and visited there for about ten or fifteen minutes, and then continued on his way north to Lake Charles, and it was on arriving at the intersection of the highway with the shell road that his car collided with that of Mr. Scaife's giving rise to this suit for damages against him.

Clifton carried public liability insurance on his car with the United States Fidelity & Guaranty Company, and that company is impleaded as a party defendant for the full amount of the damages claimed, that is, $10,000.

It is the plaintiff's contention that he had completed the turn from South Street road and that his car had entirely cleared the extreme east intersecting edge of that road when it was struck. He charges Clifton with negligence in driving his car at a reckless and excessive rate of speed of between 55 and 60 miles per hour and of having so lost control of it that he entered the shell road east of the east line of South Street road and crashed into his car.

The defendants filed a joint answer in which it is denied that Clifton was driving at a reckless speed, and it is averred, on the contrary, that he was driving at a moderate speed on his right-hand side of the road. It is further alleged that plaintiff was driving his car carelessly, and that he was grossly negligent in making a left-hand turn in the intersection while Clifton's car was approaching from the opposite direction. It is also averred that when Clifton saw that the plaintiff was going to make the turn, that he was unable to avoid the collision. In the alternative, defendants plead contributory negligence on the part of the plaintiff.

In a supplemental answer filed by him individually, Clifton reconvenes for the sum of $344.60 alleged by him to be the amount of damage done to his automobile by reason of the collision.

The lower court rendered judgment against the plaintiff, rejecting his demand and in favor of the defendant Clifton on his reconventional demand as prayed for, and plaintiff has appealed.

■ The exact, or near exact spot in the intersection at which the impact between the cars took place is the most important factor in determining the negligence of the defendant Clifton, and inasmuch as the testimony of the latter and that of the plaintiff, the only eyewitnesses to the accident, is in direct and positive conflict on this point, it is necessary to consult some of the physical facts in order to arrive at a satisfactory solution of that issue.

On the eastern edge of the South Street gravel road right where it is intersected by the shell road, there is a culvert in line with the ditch running north and south and which takes care of the drainage on that side of the road. This culvert, as we understand, is em-bedded in the ground and made fast with concrete at both ends. The concrete part is finished with a head wall or bulkhead which projects above the surface of the road perpendicularly with the ends of the culvert. The head walls therefore run east and west. The one on the northeast side of the intersection, with which we are particularly concerned in this case, was, at the time of the accident, 12 to 14 inches high. It has since been reduced some 6 to 8 inches and now stands 6 inches above the level of the road.

The measurements made by engineers indicate that South Street road, at the intersection, is 45 feet wide from shoulder to shoulder, but the gravel or usual traffic surface is 29 feet. The shell road which crosses it is shown to be about 25 feet in width.

After the collision, when the cars came to a rest, the weight of the evidence shows that the plaintiff's car had been forced around the extreme northeast corner formed by the joining of the two roads. The front end was hanging by the bumper, over the head wall above the culvert, and it was facing southwest. The rear end was in the ditch along the shell road. Clifton's car came to a final stop on the gravel road, some 2 or 3 feet west of the culvert header, the front end facing northeast. The front ends of the two cars were therefore facing each other some 2½ feet apart.

Photographs of the two automobiles, in their damaged conditions, indicate beyond doubt that the force of the impact against the plaintiff's car was all to the left side, the blow appearing to be a glancing one starting somewhere about the middle of the running board. The damage to the Clifton car, on the other hand, was all to the right front end, including the bumper, the lamp, and fender and wheel. The top of the hood appears to be out of place, but that must have been caused by the crushing of the lamp and fender against its side.

The same night, maybe an hour or so after the accident, it was observed by some witnesses that there was a track, resembling the skid mark of an automobile, on the shoulder on the east side of the South Street road, leading from a point about 130 feet south of the intersection to a point east of the east edge of the South Street road in the intersection, which led these witnesses to believe that it was a skid mark made by Clifton's car. This mark, according to some of these witnesses, was very pronounced and was irregular, tending to show, as they say, that he must have been driving at a furious rate of speed and

evidently did not have his car under control. Some say that the mark was lost for a distance of about 15 feet at one place and then was easily traceable again and extended up to the point where the impact no doubt took place. Others refer to the track as being unbroken all the way. Of course, not one of these many witnesses was able to state that the mark had been made by the Clifton car and their testimony after all amounts to opinion evidence based on the circumstances which they say connect the track with the Clifton car and which they say he had lost control of, and as the track came to a stop at a point east of the eastern edge of the South Street road and into the shell road itself, the impact necessarily took place after Mr. Scaife had completed the turn into the shell road.

As honest as we believe these witnesses to be in their convictions resulting from this circumstantial evidence, we find it impossible for us to make our views coincide with theirs. For an automobile to make an impression on the surface of the road such as they describe, a rather powerful application of the brakes is necessary. It is shown that the brakes on Clifton's car were in good condition. Conceding therefore that he was traveling as fast as 55 or 60 miles an hour as alleged in plaintiff's petition, and that he applied his brakes at a point 130 feet from the place of collision, it seems hardly possible that his car would have continued in motion at such speed, as it must still have been going, at the point of impact, to cause the damage it did.

At most, there is only a probability that the track seen by these witnesses was a skid mark made by Clifton's car and from which results the physical fact so strongly relied on by the plaintiff. On the other hand, the relative positions of the two automobiles after they came to a rest following the impact, and the damage appearing on each, are physical facts which cannot be disputed and to which the mere probabilities arising from the other must yield. It is impossible to explain how both cars could have come to a stop on the gravel road after the accident, if, as some of the witnesses would have the court believe, the impact took place after Mr. Scaife had entirely cleared the intersection and his car was some feet beyond the east line of South Street road into the shell road. Counsel for plaintiff themselves offer no explanation and certainly we cannot supply any. Besides, it would seem to us that if the collision took place at the point they say it did, after the two cars had entered the shell road, it is hardly probable that the right front end of Clifton's car would have struck plaintiff's. And still, from an examination of the photographs of the two cars, it cannot be disputed that it was that end of his car that crashed into the Scaife car and that the blow was one that glanced toward the rear of the latter car.

Our conclusion, as was that reached by the district judge, is that the physical facts in the case corroborate the testimony of the defendant Clifton to the effect that the collision took place at a point between the center of the intersection and the east line of South Street road, and not after the plaintiff's car had already completely negotiated the left-hand turn into the shell road.

Mr. Scaife was bound to have seen the Clifton car coming from the opposite direction at a considerable distance, because according to his own version it was still about 250 feet from him when he started to make the turn into the shell road. Under his own estimate of that distance and of its speed at 60 miles per hour, he had less than three seconds in which to make this left-hand turn and clear the intersection before the other car would have been upon him. No prudent and careful automobile driver, we believe, would have attempted this dangerous maneuver under the circumstances which confronted him, and in our opinion he was guilty of negligence.

But the testimony is by no means convincing that Clifton was driving at 60 miles. He admits that he was going about 45 miles, which in itself is not reckless or excessive. True, he was approaching an intersection and had full view of the approaching car, but he looked for traffic from either side of the intersecting road and saw none coming from either direction, so he continued, having no reason to expect that the Scaife car would attempt a left-hand turn in the face of his oncoming car. Under the condition that existed, it was Scaife's duty to slow down sufficiently or even to stop, if necessary, to let Clifton's car pass over the intersection before attempting to turn, and this Clifton had the right to assume he would do. He says that he was 25 or 30 feet from the Scaife car when it started to make the turn, and, despite his strongest effort to get around it, he could not possibly avoid striking it. We believe the facts bear him out and agree with the learned trial judge that he was not to blame for the accident and that he is entitled to recover on his reconventional demand for the damage to his car which is shown to be the amount claimed by him.

The judgment appealed from is correct and it is accordingly affirmed.