## Hunt v. Whitlock's Administrator.
### Same v. Coyle.
### Same v. Lane.
(Decided April 30, 1935.)

C. C. BAGBY, HENRY JACKSON and ADD LANIER for appellant.

JAY W. HARLAN and SANDERS E. CLAY for appellees.

Opinion of the Court by Judge Richardson—Affirming.

To recover damages for the death of O. J. Whitlock, the administrator of his estate brought an action against Frank M. Hunt and E. R. Holtzclaw, partners doing business under the firm name of Hunt & Holtzclaw, and Frank M. Hunt, individually. James Coyle and Albert Lane also instituted their separate actions against them to recover damages for injuries they had respectively sustained in the same accident.

They were consolidated and tried as one. The issues were formed by appropriate pleadings, and, on a trial to a jury, a verdict was returned against Hunt in favor of Whitlock's administrator for $5,785; Coyle, $1,690.50, and Lane, $304. The court directed a verdict for the firm of Hunt & Holtzclaw, and Holtzclaw, individually. The appeal against Whitlock's estate and Coyle was granted by the circuit court, and a motion for an appeal as to Lane has been entered herein. No cross-appeal has been requested or granted; therefore, we shall consume neither time nor space to consider the ruling of the court granting the peremptory instruction.

Hunt argues in his brief that the evidence does not establish the relation of master and servant between him and Gloyd Miller, the chauffeur of the Dodge car, which, it is charged by the negligence of Miller, collided with Whitlock's car, resulting in his death and the injuries of Coyle and Lane. And if such relation existed between them, it had been abandoned by Miller before the accident happened. He contends that the instruction defining the statutory duties of Miller erroneously fails to embrace all of the language of the statute in relation thereto. Also, this instruction destroys the "fourth instruction on skidding." He insists that the evidence discloses that the Dodge car skidded and thereby was caused to collide with that of Whitlock. He further contends the instructions are confusing and there was no evidence authorizing an instruction on "the implied authority" of Miller.

To determine whether the relation of master and servant existed between Hunt and Miller at the time of the accident, as well as the criticism of the instructions, requires a reproduction of the salient substance of the evidence.

Hunt and Holtzclaw were partners engaged in conducting a grocery store; Hunt at the same time owning and operating a farm. Howard Hunt, a son of Frank Hunt, resided at the home of his father and engaged in trucking; Gloyd Miller operated his truck, and, while doing so, made his home at Frank Hunt's. When not engaged in operating the truck, Miller did chores about the home of Frank Hunt. One Carey, previous to the accident, had rented and cultivated Frank Hunt's farm, during which time he purchased groceries of the firm of Hunt & Holtzclaw, for which he had executed a note payable to them for something over $400. Failing to pay it, the firm filed suit against him and caused an attachment to be issued and levied on his portion of a tobacco crop which he had grown on the farm of Frank Hunt. In the action, Carey filed an answer and counterclaim seeking to recover of Frank Hunt, individually, an account arising out of transactions between them while he was occupying, as tenant, Hunt's farm. On the morning the case was set for trial on the issue made on Carey's account, Frank Hunt, in a Ford car, with Gloyd Miller, left home and went to the courthouse. On the calling of the case for trial, conceiving that he needed Guy Hunt, his nephew, as a witness to defeat Carey's counterclaim, Hunt called Gloyd Miller to him, delivered him the keys to the Ford car and directed him "to go and bring" to the courthouse, Guy Hunt. Some of the witnesses say that in giving directions to Miller, he said: "Go and come." Miller, with the keys, departed, and on leaving the courthouse he met Howard Hunt. Conceiving the Ford car did not contain sufficient gas to make the trip and return, Miller delivered the key to the Ford to Howard Hunt and received from him the key to a Dodge car. He secured the Dodge and began his journey. On the way the Dodge collided with Whitlock's, in which he, Coyle, and Lane were traveling, on the highway. A number of witnesses were present at, and in sight of, the collision. They deposed that Miller was traveling from 60 to 75 miles an hour, when Whitlock, observing his approach, operated his car to the right and brought it to a stop at a fence. The highway at this point was straight and unobstructed for several hundred feet and while Miller's car was covering this distance, he was operating it to the left and to the right of the center of the highway, and back and forth, and while it was so zigzagging it ran into the front of the

Whitlock's car, instantly killing him, seriously injuring Coyle and more or less injuring Lane.

Explanatory of his so operating the car, Miller claims the highway was wet and slippery and this caused his car to skid. Upon this claim, Hunt, to exempt himself of liability, invokes the principles of "unavoidable accident."

This term is synonymous with "inevitable accident," and, as used in a case of this kind, means "an unforeseen and an unexpected event occurring externally to the person affected by it, and of which his own agency is not the proximate cause." 4 R. C. L. 711; Huffman v. Commonwealth, 193 Ky. 79, 234 S. W. 962. The questions to be determined here are: Was the Dodge car where it was because of Miller's negligence or was it there, which, by the exercise of ordinary care, he could not prevent, and was its presence where it was the proximate cause of the death of Whitlock and the injuries of Coyle and Lane?

The failure of the driver of a motor vehicle to keep to the right side of the center of a highway is excused where, without fault on his part, the vehicle skids across the center line; but, where its skidding results from his negligence, the doctrine of "unavoidable accident" may not be invoked to exempt liability for the consequences. Consolidated Coach Corporation v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1. It is likewise true that the skidding itself is not ordinarily evidence of negligence, where it skids across the center line of the road to the left side thereof and collides with another; but the burden is upon the driver on the wrong side of the road to excuse or justify the violation of the law of the road. Berry on Automobiles (4th Ed.); 1 Blashfield, Encyl. of Automobiles, page 414; Chase v. Tingdale Bros., 127 Minn. 401, 149 N. W. 654; Peterson v. Pallis, 103 Wash. 180, 173 P. 1021; Thomas v. Adams, 174 Wash. 118, 24 P. (2d) 432; Wilson v. Congdon (Wash.) 37 P. (2d) 892; Leonard v. Hey, 269 Mich. 491, 257 N. W. 733; Johnson v. Freeman Canning Co., 270 Mich. 524, 259 N. W. 660.

The evidence shows that antecedent to, and at the moment of, the collision, Miller was running from 60 to 75 miles an hour—an unreasonable and reckless rate considering the conditions and surrounding circumstances

confronting him. The same rate of speed of a motorist may be negligent under some circumstances and not negligent under others, since the degree of care required of him is measured by the obligations and situation of the occasion. As respects his liability for injuries caused by excessive speed, the propriety of any rate cannot be fixed at any definite number of miles per hour.

For a more concrete statement of the controlling rule in the form of an instruction, see Utilities Appliance Co. v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478, which was approved in the recent case of Diamond Taxicab Co. v. McDaniel, 258 Ky. 478, 80 S. W. (2d) 562. It was applied in Bramlett v. Harlow et al. (Mo. App.) 75 S. W. (2d) 626, and Pryor et al. v. Strawn (C. C. A.) 73 F. (2d) 595; Scaife v. Clifton (La. App.) 160 So. 142.

It is not doubtful that because of the rate of speed at which Miller's car was being operated he lost control of it, and thus it collided with Whitlock's. It is established with like certainty that if Miller's car skidded, it was because of the rate of speed at which he was traveling. The evidence entirely fails to show any excuse or justification for his operating his car at the rate of speed, and in the manner, it was being operated immediately preceding and at the moment of the accident. Indeed, the evidence well authorized a directed verdict on the issue of his negligence as the proximate cause of the death of Whitlock and the injuries of Coyle and Lane.

The insistence that at the time of the collision the relation of master and servant between Frank Hunt and Miller did not exist disregards the evidence and omits the observance of the fundamental law which controls the case.

The evidence showing the time, place, and purpose of the creation of this relationship between them, is neither denied nor disputed. Hunt's liability, and the right of the estate of Whitlock, and of Coyle and Lane, to recover of him, must be tested and determined by the law of agency. American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Williams v. National Cash Register Co., 157 Ky. 836, 164 S. W. 112; Singer Mfg. Co. v. Rahm, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440.

At the time of the collision, Miller was literally acting within the course and in the scope of his employment and in furtherance of the business of Frank Hunt, though he was at the time operating the Dodge instead of the Ford car. His using the Dodge to perform the services of Hunt is irrelevant, for in the performance by him of the services in accordance with Hunt's directions and command, it was indispensable that he use some sort of a car, and in so using the Dodge he was acting within the course and in the scope of his employment and furthering Hunt's business, which is the controlling factor to be considered in determining Hunt's liability. Ben Humpich Sand Co. v. Moore, 253 Ky. 667, 69 S. W. (2d) 996.

Aside from this, the evidence establishing his ownership of the Dodge conflicts with his denial and that offered by him in corroboration of his own statement. Plainly, it was sufficient to authorize a verdict on the issue as to his ownership of the Dodge, for or against him. Where the evidence so conflicts, we are not permitted to substitute our judgment on the issue to which it was directed, for the jury's finding thereon. It not being on this issue palpably against the evidence, we are not authorized to disturb it.

Hunt's criticism of the instructions is unsound. As we have indicated, they were more favorable to him than he was entitled to.

Other minor questions are debated in briefs, but, entertaining the views herein expressed, we do not deem it incumbent upon us to consider them.

Perceiving no error warranting a reversal, the judgments as to Whitlock's estate and Coyle are affirmed; the motion for an appeal as to Lane is denied, and the judgment as to him is affirmed.