DALE WALLIS, *Plaintiff and Respondent,*

v.

MARY NAUMAN, *Defendant and Appellant.*

(No. 2301; March 27th, 1945; 157 P. 2d 285)

232

For the plaintiff and respondent the cause was submitted on the brief of Joseph Garst and R. C. Maurer, both of Douglas, Wyoming, and oral argument by Mr. Garst.

For the defendant and appellant the cause was submitted on the brief and also oral argument of T. C. Daniels of Douglas, Wyoming.

234

236

OPINION

RINER, Justice.

This cause is here by direct appeal from a judgment of the District Court of Converse County, in favor of Dale Wallis, plaintiff below, and respondent here. The litigation arose in consequence of a collision between two automobiles, one driven by Wallis and the other by Mary Nauman now the appellant and heretofore the defendant in the District Court. Fortunately no person was injured as a consequence of the accident but the Wallis car suffered considerable damage and he brought an action in the Court aforesaid to recover therefor on account of the defendant's alleged negligence in operating her car.

The accident appears to have occurred sometime between 5:30 and 6 o'clock in the late afternoon of December 8, 1943, on U. S. Highway 385, at a point about three miles north of the town of Douglas, Wyoming,

this road at that place running approximately north and south. Plaintiff was driving northerly and away from the town aforesaid while the defendant was coming southerly to her home in that place, she being a school teacher and returning from her school work that day, the school being located some 21 miles from town. She had driven about 9 miles on the highway before reaching the point where the accident happened.

Plaintiff's petition charged as negligence on the part of the defendant that she was driving on the highway "at a rate of speed greater than was reasonable and proper having due regard for other traffic on said highway and the use and condition of the road" and also that at the place where the two cars met "there is sufficient room for two meeting cars to pass but defendant did not have the car which she was driving under control and as a direct and proximate result defendant drove into Plaintiff's lane of traffic and into Plaintiff's automobile while plaintiff was exercising due care for his own safety and the safety of his automobile."

Defendant's answer was in substance a general denial and also submitted a defense of alleged contributory negligence on plaintiff's part in that he "at the time of the accident mentioned in the Plaintiff's petition, although it was then after dusk, was driving with only one head light illuminated and, although approaching the summit of an incline in the highway beyond which his view was obstructed, was driving in the center of the highway and not entirely upon his own side, as required by law, and was driving at a rate of speed in excess of what was reasonable and proper, having regard to the icy and slippery condition of the road." Plaintiff's reply put in issue "every allegation of new matter alleged in said answer."

The cause was tried to the Court without a jury with the result stated above. There was embodied in the judgment a general finding for the plaintiff and against the defendant.

Concerning the effect to be given such a finding this Court has heretofore said in Hinton v. Saul, 37 Wyo. 78, 259 Pac. 185, that:

"And in causes tried to a court, a general finding is one of every special thing necessary to be found to sustain the judgment."

Citing a number of Oklahoma decisions.

Quite in line with this statement of the law is the case of Knaggs v. Mastin, 9 Kan. 533, where in an opinion receiving the assent of Mr. Justice Brewer this was said:

"Where facts are established by a general finding of a court, it must always be presumed that all the controverted facts are established in favor of the party for whom the court finds, and against the party against whom the court finds."

The Supreme Court of Indiana in Baldwin v. Roussey, 192 Ind. 300, 136 N. E. 85, in similar vein remarked:

"The general finding of the trial court in favor of the appellee is a finding that all necessary facts pleaded by the complaint are true as having been proved by sufficient evidence."

The Massachusetts rule on this point is thus given by Mr. Chief Justice Rugg, in MacDonald v. Adamian, 294 Mass. 187, 200 N. E. 888:

"The general finding for the plaintiff imports the · drawing of all rational inferences to support that conclusion permissible on the evidence and a finding of all subsidiary facts conducing to that result of which the testimony is susceptible. The credibility of the witnesses is exclusively for the trial judge. Standard Oil Co.

of New York v. Malaguti, 269 Mass. 126, 129, 168 N. E. 535; Topjian v. Boston Casing Co., Inc., 288 Mass. 167, 192 N. E. 507."

Also the well-known text, 64 Corpus Juris 1280, Section 1159, puts the rule in this form:

"In the absence of special findings in irreconcilable conflict therewith, a general finding imports a finding of all subsidiary facts necessary to render it sufficient and support it, and the judgment. In other words, a general finding for one party is equivalent to a special finding in his favor on every disputed fact, and a general finding against a party constitutes an adverse decision on all issues."

With these authorities in mind we take from the record a summarized statement of the facts we must regard as established by the testimony upon review here. They are substantially that the sun set on December 8, 1943, the day of the accident, at 5:30 p. m., Mountain War Time; that plaintiff left the town of Douglas to drive to his home about 5:15 that afternoon; that he had driven about three miles from town before the accident happened; that at that time the visibility was good for about a half mile though it had started to spit a few flakes of snow; that the road was very bad, being icy and "awfully slick in spots and spots where the snow had been worn out by cars traveling;" that the highway was one with an oiled surface; that when plaintiff first saw the defendant she was approximately a hundred yards distant and her car had just come over the top of the hill over which the road passed at that point; that at that time he was traveling between 15 and 20 miles an hour and that he saw the lights of her car as she came over the hill and she was driving all right then; that after she had come a little way down the hill he noticed that the back end of her car started sliding over to her right; that this position was not such a bad position if she had allowed the car to slide. Plaintiff testified in that connection "She was

taking in the middle of the road so that I had to either turn out of her way or run into her. I wasn't able to stop because if I had put my foot on the brake or tried to stop, I would have went into a skid." It also appears that to meet this situation plaintiff gradually drove his car to his extreme right-hand side of the road, four feet off the oiled surface of the highway with the two right wheels of his car in the barrow pit, the two left wheels resting on the graveled shoulder of the highway referred to in the next paragraph.

At the place where the plaintiff drove off the highway, the oiled surface of the road was twenty-one feet wide and there was also a "shoulder or graveled strip on the outside of the oiled mat" approximately five feet wide. Describing the accident plaintiff stated that the defendant's car skidded down the inclined highway at an angle of about forty-five degrees the rear of her car being to her right side of the road and its front being near the center of the road; that in this position the defendant's car slid down some 25 yards; that as the two cars met her car stopped skidding and abruptly shot towards plaintiff's car and immediately thereafter the collision occurred. Both parties then got out of their respective cars and plaintiff asked the defendant what was the matter and his testimony is, " 'Well,' she says, 'I guess I put my foot on the brake.' She says, 'I guess I put my foot on the brake and the car started sliding and when it was headed that way, I tried to beat you and get ahead of you.' And she said, 'You should have turned off to my left or went around me the other side.' And then she said, 'You only have one light.' I said, 'I know that now. I see there is one knocked out'."; that she told his father, "She was going to pass me before I got to her, the route her car was going, and go right on past me on into the barrow pit in front of me, before I got to where her car would have struck mine. I don't know what she was figuring on

there. I didn't know she was figuring on pulling-in front of me like that."; also that she stepped on the throttle of her car in order to do that.

On cross-examination plaintiff stated he had the lights of his car on; that if defendant's car had kept on skidding it would have skidded on down the road but instead it came more off towards plaintiff's car; that immediately after the accident her car was across the highway and about the center, two car-lengths away, the left fronts of the two cars having met in the collision; that if the defendant had kept in her skid she would have skidded on by; that she had the whole highway to skid in and plaintiff was four feet off the oiled surface.

A passing motorist who came to the place of the accident about 6 p. m., and who took both parties in his car to the home of plaintiff's father, testified that the defendant stated at that time that "she guessed she done the wrong thing by putting her foot on the brake and trying to stop."

On cross-examination the defendant responded to the question, "And after you got down part way in your skid and was approaching Wallis's car, you may or may not have stepped on the throttle, in an endeavor to get off the highway," thus, "I had an intention to get off because I was in front of his car, but it seemed almost instantly his car was in front of mine so I wouldn't know whether I got any result or not."

It is contended on behalf of the defendant that plaintiff was in the center of the road when she first observed his car and that he had only one headlight operating. Defendant's testimony was that as she came to the brow of the hill and could see over she saw a car coming which "looked like it was in the middle of the road"; she also stated that when she first saw Wallis'

car from the top of the hill it was approximately a hundred yards distant. Even if we assume that plaintiff's car was at that time in the center of the road our attention has been directed to no authority which would indicate he had no right to be there when no car was using the opposing traffic lane. At the time the collision occurred, however, there seems to be no doubt but that plaintiff was entirely off the oiled surface of the highway with only two left wheels of his car on the road's shoulder and two wheels in the barrow pit to his right. So far as the claim of the plaintiff's having only one lamp lighted is concerned the testimony would seem to be in dispute and, under the general finding rule above and also the familiar appellate court rule governing the consideration of conflicting testimony here, we are obliged to take that contention as resolved adversely to the defendant by the trial Court.

The law relative to a skidding automobile which leaves it right side of the road and passes over the center of the highway into the traffic lane legally reserved for vehicles moving in the opposite direction is well expressed by the authorities now to be cited.

In De Antonio v. New Haven Dairy Co., 105 Conn. 663, 136 Atl. 657, the Court said:

"Failure to keep to the right when, *through no fault of the driver,* an automobile skids on a slippery pavement and is thus thrown across the road, has been held to excuse failure to comply with the statute. Chase v. Tingdale, 127 Minn. 401, 149 N. W. 654, Huddy on Automobiles (7th Ed.) § 333; Berry on Automobiles, § 865. But, if such skidding results from negligent acts or omission of the driver, he is not absolved from the consequences of breach of the rule, although it is not deliberate or intentional."

In that case it appeared that a truck skidded into plaintiff's car when the latter was being driven "nearly off the concrete to his right and leaving almost the en-

tire width of the road to other traffic." A verdict and judgment for the plaintiff was upheld.

So in Hunt v. Whitlock's Adm'r., 259 Ky. 286, 82 S. W. 2d 364, the Court uses this language:

"The failure of the driver of a motor vehicle to keep to the right side of the center of a highway is excused where, without fault on his part, the vehicle skids across the center line; but, where its skidding results from his negligence, the doctrine of 'unavoidable accident' may not be invoked to exempt liability for the consequences. Consolidated Coach Corporation v. Hopkins' Adm'r., 238 Ky. 136, 37 S. W. (2d) 1. It is likewise true that the skidding itself is not ordinarily evidence of negligence, where it skids across the center line of the road to the left side thereof and collides with another; but the burden is upon the driver on the wrong side of the road to excuse or justify the violation of the law of the road. Berry on Automobiles (4th Ed.); 1 Blashfield, Encyl. of Automobiles, page 414; Chase v. Tingdale Bros., 127 Minn. 401, 149 N. W. 654. Peterson v. Pallis, 103 Wash. 180, 173 P. 1021; Thomas v. Adams, 174 Wash. 118, 24 P. (2d) 432; Wilson v. Congdon (Wash.) 37 P. (2d) 892; Leonard v. Hey, 269 Mich. 491, 257 N. W. 733; Johnson v. Freemont Canning Co., 270 Mich. 524, 259 N. W. 660."

Both, 2 Blashfield, Cyc. of Automobile Law (Perm. Ed.), Sec. 916, P. 58, and 3-4 Huddy, Cyc. of Automobile Law, Sec. 109, p. 176, announce the rule that skidding to the left side of the road cannot be excused "if the skidding is due to the negligent acts or omissions of the motorist."

Supplementing the foregoing citations it may be proper to call attention to that portion of Section 72-204, W. R. S., 1931, which reads:

"Whenever any person, traveling with any vehicle or conveyance on any road or public highway in this state, shall meet another vehicle or conveyance traveling in an opposite direction it shall be the duty of the driver of such vehicle or conveyance to turn promptly to the

right of the center of the traveled road and to remain on the right of the center of the traveled road until such vehicle or conveyance has passed."

Under a statute substantially resembling in its fundamental idea our law quoted just above in Consolidated Gas Electric Light & Power Co. of Baltimore, et al., v. O'Neill, 175 Md. 47, 200 Atl. 359, the Court uses the following language:

"The rule of law with respect to situations similar to the one we find here has been stated by this Court in Potomac Edison Co. v. Johnson, 160 Md. 33, 152 A. 633; Newman v. Stocker, 161 Md. 552, 157 A. 761 Code of Public General Laws, Art. 56, Sec. 209, as amended by the Acts of 1929, Ch. 224, provides 'a rule of the road,' binding upon persons driving vehicles upon highways of this State and provides that such vehicles 'shall at all times keep to the right of the center of the highway upon all highways of sufficient width, except upon streets or roads where traffic is permitted to move in one direction only, and except when overtaking and passing another vehicle, and unless it is impracticable to travel on such side of the highway.'

"It has been held that one who violates this statute does so at the risk of being held for negligence where collision and resulting injuries are directly and proximately caused by such violation. See Kelly v. Huber Baking Co., 145 Md. 321, 125 A. 782; Lusk v. Lambert, 163 Md. 335, 163 A. 188, and cases there cited. The presence of the defendants' automobile on the left side of the road, and the fact that it had been driven out of the line of traffic and across the highway and into the plaintiff's car, in the absence of other facts, would constitute evidence of negligence. Potomac Edison Co. v. Johnson, supra."

The text of 1 Blashfield, Cyc. of Automobile Law, (Perm. Ed) Sec. 637, appropriately says:

"Driving along the left-hand side of the street or in the middle thereof is not of itself negligence, but becomes so, if at all, only because of surrounding circumstances or because forbidden by statute or ordinance,

as the rules requiring operation of automobiles on right of roadway do not contemplate strict compliance therewith, except when automobile passes another from opposite direction."

A number of decisions are cited in support of the view thus expressed.

5 Am. Jur., Sec. 286, p. 661, discussing the duty of vehicles meeting, uses this language:

"It is generally held that a traveler upon the highway may occupy and use any part of the road he desires when it is not needed by another whose rights are superior to his own. In fact, his right to travel on either side of the road is asserted to exist except as against one coming from the opposite direction. When he meets another traveler, he must, if he is traveling on his right side, remain there, or if he is traveling upon his left side, he must turn to the right in order to give the other an opportunity to pass. Failure to do so is negligence, or at least primafacie evidence of negligence. The rights of one on his left-hand side of the road are inferior to the rights of another coming from the opposite direction."

In view of the effect to be given the general finding of the Court in favor of the plaintiff and against the defendant, as hereinbefore stated, we are obliged to conclude that there was evidence from which the Court could reasonably find that the defendant was negligent in endeavoring to cross the highway in front of plaintiff's oncoming car and go into the barrow pit on his right side and in opening the throttle of the motor of her car in an endeavor to accomplish this thereby causing the vehicle to move quickly in that direction and thus strike plaintiff's car notwithstanding the fact that the latter was at least four feet off the oiled mat of the highway (which was some 21 feet wide as we have seen) and on the right side of the road; also that if the defendant had not attempted this maneouver her machine would have skidded on past plaintiff and there

would have been no collision. The trial judge saw the witnesses and heard them testify, an important advantage we do not possess. He, as a trier of the facts was, of course, the one to determine the credibility of these witnesses.

Additionally, we may note there is testimony in the record that the probable result of putting a brake on a car when on an icy and slippery road such as this highway was at the time would be to throw the car immediately into a skid.

We see no other course open to us but to affirm the judgment of the District Court of Converse County and an order to that effect will be entered.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.