ERNEST M. DULANEY and EFFIE DULANEY,
*Plaintiffs and Respondents,*

vs.

HENRY JENSEN,

*Defendant and Appellant.*

(No. 2357; June 10th, 1947; 181 Pac. (2d) 605)

314

For the plaintiffs and respondents there was a brief by Ellery, McClintock & Gray of Cheyenne, Wyoming and oral argument by Mr. A. G. McClintock.

For the defendant and appellant there was a brief by Loomis & Lazear and Sam M. Thompson, Jr. of Cheyenne, Wyoming and oral argument by Mr. Edward T. Lazear.

316

## OPINION

RINER, Chief Justice.

The District Court of Laramie County rendered a judgment declaring that a certain deed absolute in form executed by Effie M. Dulaney and Ernest M. Dulaney as grantors designated in the instrument as "wife and husband" to Henry Jensen, grantee, to be a mortgage and awarding a money judgment in favor of said grantors and against said grantee. The property involved embraces five acres of ground described by metes and bounds, is located about four or five miles from the City of Cheyenne and the eastern boundary thereof adjoins the westerly boundary of the Fort Francis E. Warren military reservation. The Dulaneys as plaintiffs, now the respondents, brought an action in the district court aforesaid seeking the relief thus granted against Jensen as defendant who as appellant has brought this proceeding to review that judgment here by direct appeal. The parties will usually be mentioned hereinafter as "plaintiffs" and "defendant" or by their respective names.

Briefly outlined the pleadings of the parties are as follows: Plaintiff's petition after describing the real estate owned by them and referred to above and alleging that on July 7, 1941 they owed the defendant about $350 for materials and supplies purchased from him by them for improvements upon said premises and that on the date last mentioned, the defendant filed in the County Clerk's office of Laramie County a "notice of intention to file a lien" for $410 upon said property then stated:

"That no lien was ever filed by the defendant but to secure to defendant the payment of the said indebtedness for materials and supplies the plaintiffs executed and delivered to the defendant a warranty deed bearing date of August 20, 1941 conveying to defendant in fee simple, the premises aforesaid, which deed though absolute in form, was intended by both plaintiffs and defendants to be a mortgage only, and to stand as security for the payment of said indebtedness aforesaid and to serve no other purpose; that at the time of delivery by plaintiffs of said deed to the defendant it was understood and agreed by and between the plaintiffs and said defendant that defendant would enter into the possession of said premises under said deed and that defendant, in order to realize from said premises the amount of said indebtedness, would rent or sell said premises or parts or parcels thereof and that as soon as defendant had either through rentals, sales or sale contracts obtained money equal to the amount of said indebtedness with interest thereon at the rate of 7% per annum he would reconvey said premises to plaintiffs".

Their pleading then avers that the defendant took possession of the property and still holds it, that notwithstanding the defendant had, not later than August 20, 1942, realized and received through rentals and sale contracts, a sum greatly in excess of the amount due him on said indebtedness, he has refused to reconvey the property to plaintiffs or account to them for these rents and profits so received by him. The prayer of the

petition sought a judgment that the deed aforesaid be declared a mortgage to secure said indebtedness to defendant, that the deeded premises should be reconveyed to them and that they be given a money judgment against the defendant for the excess moneys over the amount of their debt to the defendant and concerning which he declined to render an accounting.

The answer of the defendant set out three alleged defenses. The first, a general denial of the averments of plaintiff's petition, the second, a general demurrer thereto and the third, a claim that under said deed, the defendant now holds and possesses the aforesaid real estate as sole owner free and clear of any rights of the plaintiffs therein. The answer also presented by way of cross petition a suit to quiet title to these premises in the defendant and against the claims of the plaintiffs thereto.

A reply to this answer was filed by plaintiffs, in form a general denial of its allegations except that it is admitted that plaintiffs claim an interest in the real estate in question.

The case was tried to the court without a jury with the result hereinbefore indicated.

The judgment of which complaint is now made, to condense it somewhat briefly, found generally for the plaintiffs and decreed that:

"the instrument dated the 20th day of August, 1941, and in form a deed absolute, be, and the same hereby is declared to be a mortgage; that the Defendant within ten (10) days from date hereof shall execute and deliver to the Plaintiffs a quit claim deed or other sufficient deed conveying to the plaintiffs all and every the lots, parcels or tracts of land"

which were thereupon described by metes and bounds; that:

"in default of the execution and delivery of the said deed as aforesaid by the Defendant, this Decree shall

have the effect and operation at law and in equity of such conveyance so as to vest the title to said premises in the said Plaintiffs in fee simple; that the Defendant shall assign to the Plaintiffs all of his interest and rights, if any, to policies of insurance covering the said premises."

that plaintiffs recover of defendant the sum of $1,496.-43 and their costs; that within ten days defendant cause to be discharged of record two certain mortgages given by the plaintiffs to a local bank and which had been assigned to the defendant on May 2, 1942; and finally that the defendant's cross petition be dismissed.

The brief of the appellant presents and argues but two specifications of error, viz.: that the judgment of the district court was not sustained by sufficient evidence and that it was contrary to law.

Under assignments of error of this character this court has frequently held that we:

"must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it."

Willis vs. Willis, 48 Wyo. 403, 429, 49 Pac. 2d 670, 678; Northwest States Utilities Co. vs. Brouilette, 51 Wyo. 132, 65 Pac. 2d 223, 69 Pac. 2d 623; Branson vs. Roelofsz, 52 Wyo. 101, 70 Pac. 2d 589; Horton vs. Colbron, 60 Wyo. 263, 150 Pac. 2d 315; Havens vs. Irvine, 61 Wyo. 309, 157 Pac. 2d 570; Jacoby vs. Town of City of Gillett, 62 Wyo. 487, 174 Pac. 2d, 505.

Where appellant comes here with a general finding of the trial court against him, as is true in the case at bar, this court has indicated the effect to be given that finding in these words:

"And in causes tried to a court, a general finding is one of every special thing necessary to be found to sustain the judgment."

Hinton vs. Saul, 37 Wyo. 78, 96, 259 Pac. 185, 191. See also Jacoby vs. Town of City of Gillett supra where the effect to be given in an appellate court of a general finding of the trial court upon controverted facts in a case was considered (p. 514 of 174 Pac. 2d) and the language of the Supreme Court of Kansas in Knaggs vs. Mastin, 9 Kans. 532, 533 was quoted remarking that such facts "must always be presumed * * * are established in favor of the party for whom the court finds". The case of Wallis vs. Nauman, 61 Wyo. 231, 157 Pac. 2d 285, 286 supplies additional authorities touching this point.

With these important rules of appellate court practice to guide us, we examine the record at bar and summarizing the facts which we think should be considered in order to properly understand and dispose of the case, they are: The appellant Jensen as the owner of a lumber company for a number of years in the City of Cheyenne, Wyoming has been a successful business man and as he testified, he has had "a good deal of education". The respondents, Ernest M. Dulaney and his wife Effie were married in 1931. During all the period covered by the transactions involved in this case he was serving in the United States Army. Mrs. Dulaney was obliged in large measure to look after these transactions as best she could. At the time of their marriage she was fifteen years old and never attended school beyond the seventh grade. She was "not a literate woman", as one witness put it, and had had no business experience prior to her marriage and has had none since. They came to live on the military reservation of Fort Francis E. Warren the year they were married.

Thereafter, on April 1, 1936, Mrs. Dulaney entered into a contract with Joseph E. Calvin and Grace E. Calvin, the owners of the five acre tract here in question, to purchase the same, deed to these premises to be

given upon payment to the vendors of the sum of $700. At that time the land was practically open prairie, the only improvement on it being a one room concrete basement. Subsequently the property was surveyed and a map made which subdivided the acreage into three tracts for rent and sale purposes as hereinafter recited. After entering into this contract to purchase, the Dulaneys moved into the basement room. They caused a well to be drilled on the premises so as to obtain a supply of water for domestic purposes.

Subsequently and during the years 1938 to and including 1941, the Dulaneys constructed certain improvements on several of the three subdivisions of these premises, said improvements consisting of two three-room dwellings and an enlargement of the basement in which they lived, by constructing some rooms above it so that it became a two room house with a basement. The lumber and material for this construction work was purchased from Jensen at Mrs. Dulaney's instance, the transactions being carried by the defendant on his account books as an open account and payments were made by the Dulaneys on that account entitled in the name of "E. M. Dulaney". June 10, 1941 there was a balance due the defendant Jensen of $410.41. On July 7, 1941 Jensen's attorney filed in the County Clerk's office of Laramie County, a "notice of intention to file lien". At that time the Dulaneys had left Wyoming and had been living in the State of California for several months.

Mrs. Dulaney was advised by defendant's attorney through correspondence that a lien upon the property aforesaid was contemplated on behalf of Jensen to secure payment for the lumber and materials supplied by the latter, whereupon she sent $20 to Jensen to be applied on the account aforesaid and subsequently in the month of August 1941 she returned to Cheyenne to

look after the matter. She first went to the Jensen Lumber Company's office and then she and Mr. Jensen proceeded to the office of his counsel where a warranty deed dated August 20, 1941, covering all the five acre property owned by the Dulaneys as described above, was prepared by the lawyer. This instrument named Effie M. and Ernest M. Dulaney as grantors and Henry Jensen as grantee and $400 as its consideration. Mrs. Dulaney executed the deed the day it bears date and sent it on to her husband then located in the State of Washington and still in Army service. He signed it August 22, 1941.

The deed was returned to Mrs. Dulaney in Cheyenne, Wyoming August 25, 1941 and thereupon she went to the office of Jensen's attorney and delivered it to him. At that time no receipt showing payment of the "open account" above mentioned was given her, and Jensen paid no money on account of the delivery of the deed. Additionally it may be noted that there was no credit of any kind given by Jensen on the Dulaney account aforesaid when the instrument was given his counsel. The day the deed was delivered a written agreement was drawn by the latter designated "contract for deed" which named Jensen and Effie M. Dulaney as parties thereto and they both signed it. Her husband, Ernest M. Dulaney, however, appears not to have signed the contract nor was he even a party thereto. He seems never to have even seen it.

This instrument provided, to summarize its terms briefly, that Jensen should reconvey to Mrs. Dulaney by warranty deed, the five acres embraced in the deed dated August 20, 1941 and delivered as described above, upon her making the required payments and performing the covenants as in said agreement set forth. Mrs. Dulaney by its terms was required to pay Jensen the sum of $416.40 in installments of $30 per month, in-

terest on the unpaid balance of the principal to be paid quarterly; she was required also to pay all the taxes and assessments on said land. In case of her failure to comply with any of these provisions, Jensen was accorded the option of declaring the whole amount due and payable, of declaring the contract forfeited terminating all his obligations thereunder and also forfeiting all rights of Mrs. Dulaney under it and all payments made by her as well as all her rights in said real estate and all improvements thereon. On the date the deed was delivered as stated above, the open account balance due Jensen from the Dulaneys was $391.40. The difference between this figure and the amount fixed in the contract aforesaid appears to have been due to a charge to the Dulaneys for Jensen's attorney's fees and certain recording fees.

Mrs. Dulaney testified on direct examination that at the time the deed was delivered and the contract as hereinbefore described was drawn, these instruments and their effect were not explained to her. There was testimony in conflict with this but under the rules covering appellate practice as they have been described above, we are obliged to take the plaintiff's version of the matter as correct. She also testified that at this time she suggested "writing a letter of some sort" so that when she left "it would give Mr. Jensen the rent on the place and he could collect the rent and then if something happened it would give him permission to sell the place and get his money and give us what was left"; that Jensen and his counsel "suggested drawing up this paper, writing it up this other way"; that she said she guessed that was agreeable with her upon being asked by them; that she then stated "I don't know much about it."

On cross examination she stated also that Jensen told her he would take care of everything after she left

Cheyenne; that she made no payments as required by the contract aforesaid because as she said "I wasn't supposed to, not the way I understood"; that the deed she gave Jensen was still a misunderstanding; that she did not understand that she was giving him the place; that she thought she was turning something over and "we would get a little something out of the place"; that she did not understand that deal; that after Jensen took what she owed him, she understood that everything would be all right then; that she thought it was written up "that the payments from the property would pay off Mr. Jensen"; that this is the understanding she thought was being written up. Some of this testimony was controverted by the defendant and his witnesses but as above indicated, on account of the general finding by the trial court in her favor we are obliged to take her testimony on these matters as true.

Subsequent to the delivery of the deed and the execution of the written agreement as detailed above, Mrs. Dulaney returned to California and did not return to Cheyenne until some time in March, 1944 when this action was commenced. Jensen went into possession of the property and commenced receiving rentals from it which he applied as credits upon the open account.

It appears that in order to obtain money to complete the purchase of the property under the Calvin contract aforesaid, on August 8, 1939, the Dulaneys borrowed from a local bank in Cheyenne the sum of $330, applied this amount on the indebtedness to the Calvins and took a warranty deed from them and also executed a mortgage to the bank upon the property for that sum. This deed and mortgage were both recorded on the date last above mentioned. March 1, 1940 another mortgage in the sum of $550 was substituted for the original one, this instrument being recorded in the proper county clerk's office March 14, 1940. Payments were evident-

ly made on these mortgages by the Dulaneys such that on March 2, 1942 there was due thereon the sum of $278.95. On that date, Jensen authorized his attorney to procure assignments from the bank of both mortgages to Jensen as assignee. This was done, and the assignments were obtained by Jensen's paying the bank $230,98. The assignments were duly recorded on March 9, 1945 and at the time of the trial of the action they were still unreleased of record.

March 5, 1942 Jensen's attorney by letter advised Mrs. Dulaney in California that the total amount claimed to be due on her contract of date August 25, 1941 had been declared by Jensen to be due and payable inasmuch as payments had not been made as required by its terms. This letter was followed on April 11 by another one from the attorney of the defendant addressed to her stating that because of her failure to make payment of all of the amount claimed to be due, Jensen, the latter, had declared the contract forfeited and that Jensen's obligations to Mrs. Dulaney were completely terminated; that her rights under said contract were forfeited and that he was "now the full and complete owner of this real estate" and that she now had "no interest in it whatsoever".

Upon receipt of these letters Mrs. Dulaney wrote to Jensen directing him to sell the property and to deduct therefrom the money due him and to send her the balance received by him over and above the amount of that obligation. No reply to this request seems to have been made by him and he made no accounting for rents and profits from the property. The ledger sheets of the appellant as they appear in the record disclosing credits on account of rentals received, payments made by purchasers on contracts of sale relative to the three subdivisions of the premises aforesaid less charges for materials, assignments of mortgages above described,

interest, insurance, survey work, filing fees, etc. as analyzed by respondents in their brief show, commencing with a balance due Jensen August 20, 1941, the date of the deed aforesaid, and continuing to the date the case was tried, a credit balance due the Dulaneys of $1,757.96. This amount seems not to be controverted by appellant though it is asserted that he is entitled to compensation for handling the property in a sum between $340 and $350. The district court evidently concluded as we infer that appellant should receive somewhat less for that service.

The law as applicable to the facts thus reviewed would appear in large measure to be discussed in the case of Gould vs. McKillip, 55 Wyo. 251, 99 Pac. 2d 67, 129 A. L. R. 1427 with extended and valuable note appended. In that case, 3 Pomeroy's Equity Jurisprudence (4th ed.) section 1195, pp. 2834-2836 is quoted and its statement so concisely made may well be reiterated here:

"Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own special circumstances; for the question finally turns, in all cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by extrinsic evidence. A general criterion, however, has been established by an overwhelming consensus of authorities, which furnishes a sufficient test in the great majority of cases; and whenever the application of this test still leaves a doubt, the American courts, from obvious motives of policy, have generally leaned in favor of the mortgage. This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the con-

veyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instruments."

The facts in the McKillip case were in many respects analogous to those in the record at bar. There a deed was held to be merely security for an indebtedness. There also an attempt was made by the agent of the creditor to cancel out the interest of the debtors in the properties involved under a written agreement between said agent and Mrs. McKillip which provided for certain payments to be made and if not made, the property rights of the McKillips should "cease and determine". But this court said in affirming a judgment for the McKillips:

"Inasmuch as the evidence on the subject was in conflict we must take it, under the general finding in their favor, that, as alleged in the McKillips' cross-petition, the trial court decided that there was no consideration for the quit-claim deed of date December 8, 1934; that it was merely given as security and in aid of the original arrangement as embodied in the escrow agreement described above, i. e., for the purpose of enabling Jeffrey and Brimmer to sell enough of the properties owned by Mrs. McKillip to pay off the indebtedness justly due to Jeffrey; that when that was done the remaining properties should be returned to the McKillips. It will be recalled that Mrs. McKillip testified she knew nothing of any arrangement to repurchase item (c) of the properties, as claimed by Brimmer, notwithstanding she was the record owner of all the properties. When to the testimony given by the McKillips is added the significant fact that the value of the properties conveyed (plus the rentals thereon received by Jeffrey and Brimmer therefor) as security to Brimmer, was, as shown by the actual sales made as described above, far in excess of the debt secured, we are quite unable

'to say that the trial court's judgment was unsupported by substantial evidence or contrary to law."

In the case at bar we have on the one side of the transaction of August 25, 1941, the date the deed was delivered and the contract of re-sale executed by Mrs. Dulaney and Jensen, a lawyer and a successful and experienced business man. On the other side, a young woman unversed in legal or business training and experience and without legal advice. As already recited, it appears that neither the instruments she signed or their effect were explained to her. She evidently desired and understood that she and her husband were to receive whatever was obtained from the property they owned less the amount due Jensen and that he was to manage the property to secure that result for them.

The original indebtedness of the Dulaneys to Jensen appears never to have been cancelled by the latter at the time the deed was delivered and the contract aforesaid executed but was continued on his books of account. In this connection also it may be noted that on March 5, 1942 at the time he declared the entire indebtedness due, Jensen's attorney wrote Mrs. Dulaney that "Mr. Jensen does not want to own this property, he merely wants you to pay him what you owe". True, she was then told also that "the property can not be sold". Yet several contracts for the sale of parts of the premises were thereafter negotiated by Jensen that very same year. In that connection it may not be overlooked that the property in question through its rentals and contracts of sale less all charges made against it had produced at the time of the trial of this action a net amount, as stated above, of which the original indebtedness by the Dulaneys to Jensen was but a comparatively small fraction.

Referring to the note appended to the McKillip case supra, as reported in 129 A. L. R. heretofore mention-

ed, we find it declared (p. 1451) and we think correctly too, that:

"The majority rule is that the burden of proving the fairness of a transaction of conveyance from mortgagor to mortgagee is on the mortgagee."

Says the Lord Chancellor in the case of Prees vs. Coke (1870) L. R. 6 Ch. App. Cas. 645, 649:

"But if a solicitor and mortgagee, which is the position in which Mr. Coke presents himself, obtains a conveyance from the mortgagor, and the mortgagor is a man in humble circumstances without any legal advice, then the onus of justifying the transaction, and showing that it was a right and fair transaction, is thrown upon the mortgagee."

Finally, the well phrased language of Mr. Pomeroy (3 Pom. Eq. Juris. (4th ed.) section 1193, p. 2826) also quoted in the McKillip case supra, may again here be appropriately reiterated in part:

"the equitable right of redemption after a default is preserved, remains in full force, and will be protected and enforced by a court of equity, no matter what stipulations the parties may have made in the original transaction purporting to cut off this right.

"This doctrine is based upon the relative situation of the debtor and the creditor; it recognizes the fact that the creditor necessarily has a power over his debtor which may be exercised inequitably; that the debtor is liable to yield to the exertion of such power; and it protects the debtor absolutely from the consequences of his inferiority, and of his own acts done through infirmity of will. The doctrine is universal in its application, and underlies many special rules of equity. It extends to stipulations limiting the time of redemption, or the parties who may redeem; notwithstanding all such stipulations, the right to redeem is general."

Points not presented to the trial court or not included in briefs of counsel have not been considered. Nick vs. John, 61 Wyo. 290, 157 Pac. 2d, 563; Ideal Bakery vs. Schryver, 43 Wyo. 108, 299 Pac. 284; Claughton vs. Johnson, 47 Wyo. 447, 38 Pac. 2d, 612.

After careful examination of the record in this case, it can not reasonably be said, we think, that there is not substantial evidence to support the judgment below or that it is contrary to law. We must therefore decline to interfere with it and the conclusion of the district court of Laramie County in this case is accordingly affirmed.

*Affrmed.*

BLUME, J., and KIMBALL, J., concur.