## BROWNELL v. FRED M. MANNING, Inc. et al.

### No. 1043.

United States District Court
D. Montana, Billings Division.

April 22, 1950.

Thomas C. Colton, Billings, Mont., Davis, Michael, Yaeger & McGinley and Philip Lush, Minneapolis, Minn., for plaintiff.

Coleman, Jameson & Lamey, Billings, Mont., Karl F. Crass, Denver, Colo., Ernest J. Goppert and Jerry Housel, Cody, Wyo., for defendants.

PRAY, Chief Judge.

This is a civil action for damages for personal injuries suffered by plaintiff in a collision between a bus of the Burlington Transportation Company of which he was the driver, and a truck and trailer of Fred M. Manning, Inc., defendant herein, of which the defendant Robert B. Hawkins was the driver, which occurred on U. S. Highway No. 20, about 9 miles north of Worland, Wyoming, on December 27, 1946. The case was tried to the court without a jury, and was submitted for decision upon briefs of counsel for the respective parties.

The court has endeavored carefully to weigh the evidence relating to this tragedy which resulted fatally to seven persons from shock and fire caused by the collision. The bus carried eighteen passengers who were entrusted to the care of the plaintiff, who was the driver in charge. In either direction from the scene of the accident, which occurred on Highway No. 20 about ten feet north of a bridge over a drainage

ditch, the highway was straight-away and the visibility was good and the drivers of both vehicles had a clear view of each other as they approached the bridge, and from the evidence it appears the thought that they might pass each other at or on the bridge was in the minds of both drivers; the heads of both drivers were at an elevation of about seven feet above the roadway so that each had a clear and unobstructed view.

The truck and trailer were going south and the bus traveling north, and the roadway was covered with snow and ice; this condition prevailed all the way north from Worland to the bridge and beyond; there is conflict in the testimony as to the extent of the snow and ice north of the bridge; the driver of the truck asserts that he suddenly and abruptly encountered snow and ice about 425 feet north of the bridge, but before he struck the icy condition he said he could see the snow on the bridge, and that when he reached the ice the truck and trailer began to swerve and skid and afterwards go out of control, and the trailer skidded across the road to the east side, but he said that he was gaining control and had the truck headed towards the west side—his side of travel—when the bus crossed the bridge and collided with the truck. Both drivers knew there was snow and ice and slippery conditions underneath their vehicles. The driver of the bus knew the conditions and had known them for a distance of 9 miles south of the bridge and also that care and caution would be required to insure the safety of his passengers, and he must have seen the threatening situation and the possible danger of a meeting on the bridge, especially when he observed the trouble the driver was having with his truck and trailer.

Both drivers had the duty of proceeding with reasonable care and caution. One driver had a heavy truck and trailer weighing about 38,000 pounds to control on snow and ice, while the other driver had a large bus weighing 21,600 pounds to control, also on snow and ice. It would seem that when such vehicles—enormous in size and weight—are about to meet on a bridge when traveling over an icy, slippery high-

way that great care should be observed not only for the safety of the drivers themselves but for the protection of members of the public generally whose safety may be endangered. The driver of the truck should have seen and prepared himself and his equipment for conditions confronting him that might prove dangerous, and the driver of the bus should have seen and understood the situation facing the driver of the truck and trailer and should have come to a full stop before crossing the bridge; according to the evidence he could have stopped had he acted promptly upon appearances in full view, and it was his duty to do so and not risk the hazard of meeting the truck and trailer on the bridge —especially so when the driver of the truck was in trouble; both could see the danger ahead when they were 800 to 1,000 feet apart, and should have slowed down and stopped; both were experienced drivers and familiar with highway No. 20 and could see the turn-outs and might have avoided the accident in that manner; but the handicap to control seems to have been the excessive speed at which both heavy vehicles were traveling over a dangerous highway. The violence of the impact is evidence of the speed both vehicles had been going before the accident; the serious injuries received by both drivers and the damage to both vehicles in the impact, and the shock and fatal injuries to some of the passengers are circumstances that disclose excessive speed and lack of proper control.

Experts testified that both vehicles were in good mechanical condition before the accident; that they had been thoroughly examined and checked for any defects and none were found, so that no good reason appears why those experienced drivers could not have kept them under control at a time when they saw danger ahead, and both vehicles were distant about three blocks from each other, and both machines and the brakes thereon were in good working order.

At or near the Sam Piel driveway Mr. Brownell said he was going about 35 miles an hour, and at the moment of impact about 15 miles. After the first swerve of the on-coming truck and trailer he said that he

might have pulled off right at the Piel driveway, if he had realized that the other vehicle was going out of control, but would have been taking a chance of going into the drainage ditch; he estimated the speed of the Manning vehicle at 50 miles per hour; he said the roadway was all ice from Worland to scene of the accident—ice with snow on top; he said he was traveling about 35 miles an hour from Worland to scene of accident, at another time in testifying he estimated his speed at 35 to 40 miles an hour over the same course. Does it appear from the evidence that a proper outlook was maintained on the part of either driver, or that either seemed fully to appreciate existing conditions, not only when they came in full view of each other, but before that, when they knew they were traveling over a bed of ice and snow, and should have regulated their speed to conform to conditions and thus be able to maintain proper control of their heavy equipments in preparation for any emergency that might arise at any time in traveling over the public highway when road conditions are fraught with danger? It was plainly discernible from the appearance of both drivers on the witness stand that both were intelligent witnesses and the evidence shows that they were experienced drivers of heavy vehicles—such as are found in this case—over the public highways under all sorts of weather conditions, during long periods of service; it appears from the testimony of the drivers that the bus was going from 35 to 40 and the truck and trailer from 40 to 45 miles per hour when the drivers sighted each other and were then from 850 to 1,000 feet apart, or about three blocks.

The court is not accepting the evidence which would require a belief that there was a sudden, abrupt and unforeseen change from clear dry black top to snow and ice at the particular spot designated; the truck driver admits he saw the snow covered bridge, and disinterested witnesses who live there and travel the road frequently disclose by their testimony that no such condition existed at the time of the accident—and both drivers were admittedly aware that they should avoid a meeting at the bridge, which appeared to be narrow because of a slight angle to the roadway, and both failed to have their respective vehicles under proper control. The evidence shows that the bus was traveling at the rate of 30 miles an hour just before it reached the bridge and the collision occurred about ten feet beyond the bridge which was about 20 feet long.

From the foregoing facts and enlightening circumstances the court feels obliged to conclude that the negligence of both drivers furnished a proximate cause of the collision of the two vehicles and the consequent damages, injuries and loss of life. After hearing the testimony of physicians and surgeons in respect to their services in behalf of the plaintiff there can be no question that he was severely injured in the collision, that the driver of the truck and trailer was also injured and thereafter hospitalized, and, furthermore, that several passengers in the bus lost their lives in the accident, all of which is to be deeply regretted, but these lamentable facts do not relieve the Judge of his serious duty to determine the responsibility for this tragic occurrence by resolving the evidence and attending circumstances to the best of his judgment and ability, and for any error committed the learned members of the higher tribunal will readily find and apply the correct solution.

During the trial of this case counsel questioned witnesses as to their testimony given on the trial of civil causes the week before, arising out of the same accident; the cases referred to by counsel were entitled Mary V. Hennessey, as administratrix of the estates of Lois Lorene Foster and Violet Mae Stotts, deceased, against the Burlington Transportation Company and Fred M. Manning, Inc., consisting of four actions for damages which were consolidated for trial, and in which the court found for the plaintiff.

Where a skidding automobile leaves its side of the road and passes over the center of the highway and into the traffic lane of vehicles traveling in the opposite direction, and "such skidding results from negligent acts and omissions of the driver, he is not absolved from the consequences of breach of the rule, although it is not deliberate or intentional * * *."

And it was further held in the same case: "Where its skidding results from his negligence, the doctrine of 'unavoidable accident' may not be invoked to exempt liability for the consequences. Wallis v. Nauman, 61 Wyo. 231, 157 P.2d 285; Hunt v. Coyle, 259 Ky. 286, 82 S.W.2d 364, 366. There seems to be no doubt that the speed of the two heavy vehicles over the icy road negligently contributed to the violence of the collision which caused the tragedy that followed. Pacific Greyhound Lines v. Rumeh (Pacific Greyhound Lines v. Rhodes) 9 Cir., 178 F.2d 652.

From what has heretofore been stated it should plainly appear that in the opinion of the court the plaintiff has not sustained the allegations of the complaint by a preponderance of the evidence, and, furthermore, that he would not be entitled to recover because of his own contributory negligence which proximately caused the collision and injuries thereby sustained. Findings of fact and conclusions of law may be submitted and form of judgment. Each side to pay its own costs. Exceptions allowed plaintiff.