## SCHOOL DISTRICT NO. 1 v. HOWARD, ET AL.

(No. 1879; December 10, 1935; 52 Pac. (2d) 421)

For the plaintiff and appellant there was a brief by *C. M. Eby* and *A. W. McCollough,* of Laramie, Wyoming, and oral arguments by *Mr. Eby* and *Mr. McCollough.*

For defendants and respondents, there was a brief by *C. R. Ellery, Thomas Hunter* and *Bard Farrall,* of Cheyenne, and oral arguments by *Messrs. Hunter* and *Ellery.*

44

*Thomas Hunter* for defendants Hofmann and Executors of Roedel Estate.

*C. M. Eby* and *A. W. McCollough* in reply.

KIMBALL, Chief Justice.

This is an appeal from a judgment on a general finding in favor of the defendants after trial to the court in an action by a School District against a building contractor and his sureties to recover the amount certified by the architect as damages for defects and omissions in the construction of a school building at Laramie, Wyoming.

The building was constructed under a contract evidenced by writings, called the contract documents, consisting of an agreement, general conditions, drawings and specifications. The agreement and general conditions are the standard form put out by the American Institute of Architects.

The agreement provides that payment of the contract price, $201,000, shall be made on certificates of the architect who, when he "finds the work acceptable under the contract and the contract fully performed,"

is required to issue a final certificate. The architect named in the agreement was W. A. Hitchcock.

The general conditions are set forth in 44 articles covering 9 printed pages. We quote the parts that seem pertinent.

Article 20, headed "Correction of Work after Final Payment," provides.

"Neither the final certificate nor payment nor any provision in the contract documents shall relieve the contractor of responsibility for faulty materials or workmanship and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion. The owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the architect subject to arbitration."

Article 25 provides for issuance by the architect of certificates for amounts due the contractor, and that

"No certificate issued nor payment made to the contractor, nor partial or entire use or occupancy of the work by the owner, shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the owner, other than those arising from unsettled liens, from faulty work appearing after final payment or from requirement of the specifications, and of all claims of the contractor, except those previously made and still unsettled."

Article 31, headed "Damages," provides:

"If either party to this Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage.

"Claims under this clause shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the time

of final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and shall be adjusted by agreement or arbitration."

Article 38, headed "Architect's Status," provides:

"The architect shall have general supervision and direction of the work. He is the agent of the owner only to the extent provided in the contract documents and when in special instances he is authorized by the owner so to act, and in such instances he shall, upon request, show the contractor written authority. * * * As the architect is, in the first instance, the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner nor with the contractor, but shall use his powers under the contract to enforce its faithful performance by both. In case of termination of the employment of the architect, the owner shall appoint a capable and reputable architect, whose status under the contract shall be that of the former architect."

Article 39, headed "Architect's Decisions," provides:

"The architect shall, within a reasonable time, make decisions on all claims of the owner or contractor and on all other matters relating to the execution and progress of the work or the interpretation of the contract documents. The architect's decisions, in matters relating to artistic effect, shall be final, if within the terms of the contract documents. Except as otherwise expressly provided in the contract documents, all the architect's decisions are subject to arbitration."

Article 40, headed "Arbitration," contains the following provisions:

"All questions subject to arbitration under this Contract shall be submitted to arbitration at the choice of either party to the dispute. * * *

"The demand for arbitration shall be filed in writing with the Architect, in the case of an appeal from his decision, within ten days of its receipt and in any other case within a reasonable time after cause thereof and in no case later than the time of final payment, except

as otherwise expressly stipulated in the Contract. If the Architect fails to make a decision within a reasonable time, an appeal to arbitration may be taken as if his decision had been rendered against the party appealing. * * *

"Unless otherwise provided by controlling statutes, the parties may agree upon one arbitrator; otherwise there shall be three, one named in writing, by each party to this Contract, (sic) to the other party and to the Architect and the third chosen by these two arbitrators, or if they fail to select a third within fifteen days, then he shall be chosen by the presiding officer of the Bar Association nearest to the location of the work. Should the party demanding arbitartion fail to name an arbitrator within ten days of his demand, his right to arbitration shall lapse. Should the other party fail to choose an arbitrator within said ten days, then such presiding officer shall appoint such arbitrator.* * *

"If there be one arbitrator his decision shall be binding; if three the decision of any two shall be binding. Such decision shall be a condition precedent to any right of legal action, and wherever permitted by law it may be filed in Court to carry it into effect."

The building was turned over to the district as completed in January, 1930; the architect's final certificate was issued, and the final payment, except for a small amount deducted on account of a minor omission, was made in April, 1930.

The architect, Mr. Hitchcock, left Laramie about November 1, 1930, and while away was killed in an accident. After his death, and on December 4, 1930, the school district board, as shown by its minutes, instructed its clerk "to write to Mr. W. E. Ware, architect, Salt Lake City, accepting his offer to make an examination of the building, the Board to pay his expenses in coming here and return; and to write John W. Howard, contractor, to meet with the Board as soon as Mr. Ware had made a report."

Mr. Ware thereafter came to Laramie "in response

to a request to investigate certain defects" in the building; made an examination of the building and the plans and specifications, and reported the result of his examination to the board. The report, dated December 10, 1930, sets forth various defects and omissions and recommendations that the contractor be required to make repairs or allowances. A copy of this report was sent to the contractor with a letter from the clerk stating that the board would be pleased to have a conference to discuss the matters set forth by Mr. Ware. The contractor declined to confer about the matter and contended then and at all other times that he had constructed the building in accordance with the plans and specifications and there was nothing to be gained by a conference.

Thereafter, Mr. Ware made an estimate of damages which he sent to the board on January 10, 1931, with a letter in which he says that the inclosure is an estimate of cost of replacing or repairing defective work which amount "should be demanded of the contractor," and a suggestion of "amounts to be claimed as damages on account of defective work not replaced." The letter also states that the board "would probably be justified in demanding" and that "it would not be out of the way to ask" other things of the contractor. The total amount of the estimated damages was $10,918.21. The letter also makes some suggestions as to what it would be well for the board to do in the way of further testing, "before the arbitration or law suit comes off," and says that "just how you would come out in a law suit is pretty hard to forecast as so much depends on how the cards are played and what the other side has up their sleeve."

On January 15, 1931, after receiving the above estimate and letter, the plaintiff prepared and served on the contractor a written statement of its claim and demand for damages. The statement recites that Mr.

Hitchcock, the architect named in the contract, "died in the fall of 1930; whereupon the said school district, through its said board of trustees, by authority conferred upon it by the said General Contract, employed one Walter E. Ware, a competent and accredited architect, in place of the said Hitchcock, deceased, with the same powers and authority, under said contract, as were conferred upon the said Hitchcock, by it." It is also recited that Ware has made an examination of the building, since its supposed completion, and found numerous defects, imperfections and inferior materials in violation of the contract. Demand is made for payment of the amount of damages as set forth in Mr. Ware's estimate.

The contractor ignored the claim. On January 29, 1931, a conference at which Mr. Ware and the contractor were present came to nothing, and thereafter (probably April 6), in Mr. Ware's words, he "was authorized by the Board to go ahead and make his report on the amount of damages." On April 10 Mr. Ware, then signing as "architect for the board," wrote the contractor that on April 15 he would be in Laramie "to review the alleged defects and damages claimed to exist by the board" and that the contractor's presence would be appreciated. The contractor ignored this notice.

On April 20, 1931, Mr. Ware made and signed as "architect for the board" a certificate that the sum of $10,918.21 was due the district on account of defects and omissions, which are listed. The certificate follows out exactly and as to every item the estimate of damage previously made by Mr. Ware and sent to the Board with his letter of January 10.

The plaintiff claims that Mr. Ware's certificate of April 20, 1931, is an award which, in the absence of a demand by the contractor for arbitration, became final

and conclusive, and not subject to attack except on grounds that would justify the vacation of an award of arbitrators. The plaintiff states that the action was primarily on the certificate which both parties sometimes call the award. The defendants say it was solely on the award. Whatever may be the theory of the petition, there can be no doubt that the case was tried solely as an action on an award. The plaintiff offered no evidence of damages except Mr. Ware's certificate. The main question for decision is whether the court erred in refusing to treat the certificate as an award which, in the absence of an appeal to arbitrators under article 40, supra, was final and conclusive.

Though the plaintiff, as we have said, relied on the certificate as an award, there was much evidence in regard to the work and materials which Mr. Ware claimed were defective or omitted. One purpose of this evidence was to support defendants' contention that the alleged defects and omissions were known to Mr. Hitchcock when he gave his final certificate. The evidence, we think, was sufficient for the stated purpose.

The defendants contend, among other things, that Mr. Ware had no authority to give the certificate in question, and that the certificate, if authorized, was not final and conclusive on the question of plaintiff's right to the damages certified. In answer to plaintiff's contention that Mr. Ware's certificate is final and conclusive, defendants say that the contract does not so provide, and cite authorities holding that to make an architect's certificate conclusive requires plain language in the contract. See, Mercantile Trust Co. v. Hensey, 205 U. S. 298, and note, 10 Ann. Cas. 575. Many such contracts contain the positive statement that decisions of the architect shall be final and conclusive. In such a case an authorized decision may have the effect of an award of arbitrators. And it seems that the intention to be bound by the architect's

decision may be implied from a provision that the work shall be done to his satisfaction, or that his certificate is a condition of payment, or, perhaps, from any provision from which it clearly appears that he has been made the final arbiter between the parties. See note, 54 A. L. R. 1255. The contract in this case provides that the architect's decisions, except in matters relating to artistic effect, shall not be final, but are "subject to arbitration." Art. 39. He is not called an arbitrator and his decisions are not called awards. It is stated that he is, *in the first instance*, the interpreter of the contract and the judge of its performance. Art. 38. There is no provision that his decisions, when not appealed from, shall become final. It is provided that questions which are subject to arbitration "shall be submitted to arbitration at the choice of either party to the dispute," and that a decision on arbitration "shall be a condition precedent to any right of legal action." Art. 40. The procedure on arbitration seems to contemplate that either party, without consent of the other, may have arbitrators selected, and obtain an award. The plaintiff has a certificate which the contract says is not final, and is asserting a "right of legal action" without producing an award or arbitrators which the contract says is a condition precedent to that right. If we look only to the words of the contract, we find nothing to justify the contention that the certificate in question has the final and conclusive effect of an award of arbitrators. See, Fontano v. Robbins, 18 App. D. C. 402; Mississippi Fire Ins. Co. v. Evans, 153 Miss. 635, 650, 120 So. 738; Snyder v. Reading School Dist., 311 Pa. 326, 166 Atl. 875; Robins v. Goddard, (1905) 1 K. B. 294; Smallwood Brothers v. Powell, 1 Ont. W. N. 1025; 3 Halsbury's Laws of Eng. (2d ed.) 248. The plaintiff, however, contends that the intention that the architect's decisions, if not appealed from, shall be final and con-

clusive must be implied, citing Bavaria Inv. Co. v. Washington etc. Co., 82 Wash. 187, 144 Pac. 68; McCloskey v. Marks, 263 Pa. 441, 106 Atl. 728; Strom-Johnson Const. Co. v. Riverview Furniture Co., 227 Mich. 55, 198 N. W. 714.

It is not necessary in this case to decide that there may not be implied from the contract an intention that many of the architect's decisions, in the absence of a demand for arbitration, should be final and conclusive. The parties probably intended that the architect's certificates showing amounts due the contractor were conditions precedent to payment and, unless corrected by arbitration, or by some other method prescribed by the contract, were final and conclusive as to the amounts due. The architect in giving such a certificate would decide questions as to deductions or allowances and probably the contractor demanding more or the owner claiming that the certified amounts were excessive, would nevertheless be concluded by the certificate until it was corrected by some method prescribed by the contract. Many other decisions which the architect was authorized to make during the progress of the work might have a final and conclusive effect, on the theory that performance in defiance of his decisions that were not superseded was not the performance agreed upon.

Here, however, we have a claim that is not asserted until after the final certificate and final payment. We may assume, as plaintiff contends, that the claim was for damages caused by work and materials not in accordance with the requirements of the specifications, and that such a claim is provided for in at least two places in the contract; first, as a claim which, as provided in article 25, was not waived by the architect's final certificate, by payment or by acceptance of the building, and then, as a claim for damages under arti-

cle 31. Neither of these articles contains any provision for a decision of the architect on the claim.

The architect's authority to make a decision on the claim must rest on articles 20 and 39. Article 39 is the general provision in regard to the architect's decisions. He shall "make decisions on all claims of the owner or contractor and on all other matters relating to the execution and progress of the work or the interpretation of the contract documents." It seems that the courts are not inclined to give a very broad construction to such general provisions, and it is probable that claims and matters "relating to the execution and progress of the work" etc. could not be held to grant authority to make a decision on claims, after final payment, for damages on account of defects and omissions known to the architect when he gave his final certificate. See Young v. Crescent Development Co., 240 N. Y. 244, 248, 148 N. E. 244; Somerset Borough v. Ott, 207 Pa. 539, 543, 56 Atl. 1079; Lawson v. Wallasey Local Board, 11 Q. B. Div. 229, 239. However, we think a construction of article 39 is of no great importance, as article 20 makes specific reference to such claims. Article 20 first declares that "neither the final certificate nor payment nor any provision in the contract documents shall relieve the contractor of responsibility for faulty work or materials or workmanship." This language differs somewhat from the language of article 25, noticed above, but probably has the same meaning. Article 20 then provides that unless otherwise specified, the contractor shall remedy defects due to such faulty work and materials and pay for any damage to other work resulting therefrom, which shall appear within one year from the date of substantial completion. The article concludes with the statement that "all questions arising under this article shall be decided by the architect subject to arbitration."

We doubt that this article should be construed as

giving the architect authority to make a decision on a claim after final payment for damages for defects and omissions known to him when he gave his final certificate. But see, Cunliffe v. Hampton Wick Local Board, 2 Hudson on Bldg. Cont. (4th ed.) 250, and S. C., 9 Times L. Rep. 378. We may assume for the purposes of this case that by article 20 the parties agreed that the architect should make a decision on the plaintiff's claim. His decision, however, according to the words of the contract, was subject to arbitration. The precise question necessary to be decided is whether there was an implied agreement that the certificate allowing the claim should be final and conclusive if the contractor failed to demand arbitration. We do not think it is necessary to discuss the question of the validity of the arbitration clause if applicable to all claims and disputes growing out of the contract. See Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 302, 169 N. E. 386, 392.

The plaintiff's claim, as we concede, was one which, under articles 20 and 25, survived the final certificate. Nevertheless, Mr. Hitchcock, the architect named in the contract, in giving his final certificate, did decide that the building was completed in accordance with the plans and specifications. His honesty and good faith have not been questioned. The evidence was sufficient to justify the finding that he then had knowledge of the defects and omissions which are the basis of plaintiff's claim. We must assume that the final certificate was an approval of all work and materials of which the architect then had knowledge. Though the certificate was not conclusive on the question of performance of the contract, it was a decision authorized by the contract and perhaps final on the question of performance to the satisfaction of the architect. See Herbert v. Dewey, 191 Mass. 403, 77 N. E. 822; St. Charles v. Stookey , (C. C. A.) 154 Fed. 772, 780.

The very fact that the decision did not relieve the contractor from liability for faulty work and materials, leads us to believe that the parties did not intend that a later decision by the same architect on the same question should be final unless submitted to arbitration. If the architect, at the time he gives his final certificate, is not the arbiter between the parties on the question of performance in accordance with the plans and specifications, we cannot imply an agreement to give the effect of an award to his later certificate on the same question.

There would seem to be even less ground for implying an agreement that would give a final and conclusive effect to the decision of the substitute architect appointed under article 38 after the certified completion of the building. It is a common provision of building and construction contracts that an architect, though an employee of the owner, shall decide questions arising during the progress of the work. It is necessary that this power be given to some one, and it is usually given to the supervising architect or engineer who is qualified not only by training but also by familiarity with the specifications and with the work as it progresses. It is not uncommon that he also be given authority to pass on questions arising after the completion of the building under defect clauses like article 20 of the contract in this case. When in the exercise of such powers he acts as a quasi-arbitrator in settling disputes, the contractor has the right to expect that he will so far as possible, considering the nature of his employment, exercise an honest judgment and not put himself under the influence of either party. It has been said that "he must be impartial as far as he can be, consistently with the natural bias due to his position as architect of one of the parties, and he must do nothing inconsistent with a judicial position." Hudson Bldg. Contracts (6th ed.) 275. The parties to the

contract in the case at bar have expressly provided that the architect "shall side neither with the owner nor with the contractor," which is saying in effect that he shall assume a judicial position. In acting as "the interpreter of the conditions of the contract and the judge of its performance" he was not to act as the agent of the owner. These provisions, of course, apply not only to the architect named in the contract but also to his successor, whose status was "that of the former architect." Art. 38.

The employment of Mr. Ware by plaintiff is shown by the motion of December 4, accepting Mr. Ware's offer to make an examination of the building. The offer is not in evidence, but we may assume that, in accordance with its acceptance, it was an offer to examine the building if the board would pay expenses. Mr. Ware testified that he came to Laramie "in response to a request to investigate certain defects" in the building; that there was no agreement made as to his pay, and that he brought in his bill when he was through each trip. This seems to be all the evidence on the question of Mr. Ware's employment. There is nothing to preclude the view that he was employed merely as an expert agent of the plaintiff to investigate claimed defects, with no thought that either party should be bound by the result of his investigation. See Page vs. Llandaff etc. Council, 2 Hudson Bldg. Cont. (4th ed.) 316, 322. Mr. Ware's communications to the board, especially his letter of January 10, referred to above, are not inconsistent with this view, and indicate that to that time he was assuming to act as agent and adviser of the board. See Hickman & Co. v. Roberts (1913) A. C. 229; Bristol Corporation v. John Avid & Co., id. 241; Brennan v. Hollingsworth, 37 D. L. R. 144. If Mr. Ware, in making an examination of the building under this employment, had reported that there were no defects, we doubt that plaintiff would

have been bound to accept his report as a decision which, unless appealed from, was final and conclusive. After Mr. Ware made his estimate of damages, the plaintiff, on January 15, 1931, in its claim for damages, declared that Mr. Ware had been appointed under the contract in place of Mr. Hitchcock. Mr. Ware evidently thought it was not until some later time that he was authorized to go ahead and make the certificate of damages. We may grant that when he gave his certificate, he was attempting to assume the status of the former architect under the contract. All he then did was to certify to the correctness of the claim which he had previously prepared while acting (as the court may have found) as the agent of plaintiff. It is hard to believe that the parties would intend that a certificate resulting from this procedure would have the final and conclusive effect of a decision of an arbitrator.

Our conclusion is that the contract contains no agreement, either expressed or implied, that would justify the finding that the certificate of Mr. Ware on the claim in question has the effect of an award.

The trial was had and the case taken under advisement in June, 1933. The judge on November 4 announced that he would give judgment for defendants on a general finding. On November 18 the plaintiff by motion requested the court to state its findings of fact separate from its conclusions of law. Section 89-1321, R. S. 1931. The motion, on December 8, was denied, and the judgment on a general finding entered. The denial of the request for special findings was not error, as the request came too late. First Nat'l. Bank v. Citizens State Bank, 11 Wyo. 32, 43, 70 Pac. 726.

The judgment is affirmed.

BLUME and RINER, JJ., concur.