M. B. LUCKSINGER and HARRY L. TEMPLE,

*Plaintiffs and Respondents,*

vs.

GEORGE R. SALISBURY, JR.,

*Defendant and Appellant.*

(No. 2572; October 27th, 1953; 262 Pac. (2d) 396).

166

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Harold M. Johnson of Rawlins, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of Eph U. Johnson, Rawlins, Wyoming.

## OPINION

HARNSBERGER, Justice.

This matter comes before us by the direct appeal of the defendant below from a judgment finding generally for the plaintiffs and awarding them $752.00 and costs amounting to $37.44.

In an amended petition the plaintiff's first cause of action alleged that in the spring of 1949 it was orally agreed between the parties that plaintiffs would sell and defendant would buy for the sum of $20 per ton *in the windrows,* all the hay produced by plaintiffs upon a 35 acre tract of land; that plaintiffs cut and raked such hay and defendant baled 22 tons *from the windrows* when defendant requested plaintiff Lucksinger to stack the remainder of the hay, amounting to an alleged 111 tons, which Lucksinger did; that defendant paid plaintiffs $440 but refused to pay plaintiffs some $2,220.00, which plaintiffs demanded as the balance due under the contract.

In a second cause of action, plaintiffs realleged the oral agreement, the baling of the 22 tons of hay by defendant, that Lucksinger stacked the remaining 111 tons of hay at defendant's request, and, further alleged, that the defendant refused to accept the stacked hay, although requested by plaintiffs so to do; that such stacked hay had deteriorated and become worthless, all to plaintiffs' damage in the sum of $2,220.00.

For a third cause of action, plaintiff Lucksinger re-

alleged the oral agreement, the defendant's baling of the 22 tons, Lucksinger's stacking of the remaining 111 tons at defendant's request, and that the value of his service for such stacking was $277.50, for which recovery Lucksinger prayed.

After the overruling of his demurrer to plaintiffs' amended petition, the defendant answered, denying generally the allegations of each of the plaintiffs' three causes of action, and affirmatively alleging (1) that the plaintiffs had warranted that the hay would be bright, well cured, green timothy clover and native hay, but that the stacked hay was spoiled and worthless and, therefore, defendant refused to accept the same; (2) that defendant had agreed to purchase plaintiffs' 1949 crop of hay raised on the 35 acre tract for the sum of $20 per ton *baled in the field,* but that after *plaintiffs* baled and delivered to defendant approximately 22 tons they refused to bale and deliver the balance of the crop; that defendant agreed to cancel the agreement, and defendant paid plaintiffs in full for hay delivered; (3) that defendant agreed with plaintiffs to buy the crop for $20 per ton *baled in the field;* that *plaintiffs* baled approximately 22 tons and delivered same to defendant; that plaintiff Lucksinger, who was in charge of harvesting and baling the hay, refused to bale any more hay and stacked the same *with the consent* of the defendant; that plaintiffs refused to deliver any more baled hay, and in September or October of 1949 defendant notified plaintiff Lucksinger that he, the defendant, would not accept further delivery of hay; that plaintiff Lucksinger agreed to the cancellation of the agreement; that defendant paid plaintiffs in full for the "aforesaid" hay, and plaintiffs accepted such payment "in full satisfaction of all sums then due for all previous transactions between the par-

ties, including all three causes of action alleged in plaintiffs' Amended Petition filed herein."

The plaintiffs' reply amounted to a substantial denial of the affirmative matter alleged in the defendant's answer.

After the commencement of the action the stacked hay was sold by plaintiffs for $1,368.00, the parties agreeing that such sale would not jeopardize the position of either of the parties to the suit.

The case being heard by the court without a jury, judgment was rendered on June 7, 1952, Notice of Appeal filed June 14, 1952, and thereafter and on July 2, 1952 the defendant filed the following Motion, which the court overruled—

(caption and signature omitted)

"Comes now the defendant in the above entitled action and respectfully requests the Court to amend its Judgment rendered June 7, 1952 and entered June 9, 1952 by setting forth upon which of the first two causes of action alleged in plaintiffs' Amended Petition the Court found in favor of the plaintiffs and whether the aforesaid Judgment included any amount found in favor of the plaintiff, M. B. Lucksinger, on the third cause of action alleged in Plaintiffs' Amended Petition;

"That the defendant further requests that the Court set forth what elements entered into the Judgment, that is, the number of tons of hay delivered to defendant if the Court's judgment is predicated upon the theory that the property in the hay passed to the defendant, and that if the Court's Judgment was predicated upon the theory that the property in the hay did not pass to the defendant, then how many tons of hay did the defendant refuse to accept and what was the market price thereof at the time of the refusal of the defendant to accept delivery thereof.

"Respectfully submitted this 13th day of June, 1952."

The errors specified are that the judgment is contrary to law and to the evidence; that the evidence is not sufficient to sustain the judgment, and that the court erred in overruling the above motion, the appellant contending in his brief and argument that the judgment is not responsive to the pleadings; that there is no evidence to sustain a judgment in favor of the plaintiff Lucksinger on his third cause of action; that the verbal agreement was within the statute of frauds and unenforceable; that the measure of damages applied by the court is erroneous, and that there was variance between the first two causes of action and the proof.

After careful study of the appellant's contention that the judgment is not responsive to the pleadings we are convinced that if this point has any merit it must be with respect to the judgment only in its relation to the third cause of action.

It is true that a judgment in favor of two or more plaintiffs upon a cause of action pleaded in favor of but one, would be subject to criticism as not responding to the pleading. However, where—as is this case—there are several causes permissibly joined in a single action, in accordance with the provisions of Section 3-613, Wyoming Compiled Statutes, 1945, a general judgment which responds to the issues made upon the joint claims of two or more plaintiffs as set forth in one or more of the causes of action will not be reversed because the judgment does not respond to the issues made upon a cause of action wherein all parties plaintiff are not claimants. To say this does not disregard nor violate the principles relied upon by the appellant that—"The judgment must correspond with the pleadings in respect to the parties for and against whom it goes" (33 C.J. 1154, Sec. 95, 49 C.J.S. Judgments, Sec. 51), or that—"The judgment must conform to, and be

supported by, the pleadings in the case" (33 C.J. 1139, Sec. 87, 49 C.J.S. Judgments, Sec. 48).

But the appellant further contends that the judgment should effectively dispose of the issues raised by the pleadings and should clearly indicate the relief for and against the parties in regard to *each* cause of action in which they are respectively interested or affected. In this connection, our attention is called to Swanson v. Johnson, 58 Wyo. 1, 8, 122 Pac. (2d) 423, 424, where we said:

"* * * If the defendant was dissatisfied with the judgment he could easily have requested the court to put that matter in such shape as to make it clear just what elements entered into the judgment with which he was dissatisfied and thereby, if he had any criticisms to make, he could have intelligently and clearly presented that matter for consideration here. * * *"

It is represented that because of this statement a request was made by the motion quoted above, and that the overruling of that motion should constitute reversible error.

The reading of this motion discloses that it goes much farther than a request to "make it clear just what elements entered into the judgment." The first cause of action is based upon the plaintiffs' alleged executed contract and the theory that the property in the hay had passed to the defendant, while the second cause of action is based upon the defendant's alleged breach of an executory contract. Thus, the causes are so inconsistent with each other that to set forth upon which of them the court based its judgment would necessarily involve a special finding of fact. The request for such a finding of fact was not made before the rendition of the judgment and, consequently, the matter was wholly within the discretion of the court.

This is equally true as to the further requests contained in the second paragraph of the motion.

Additionally, in 34 C.J., Sec. 475, p. 250, 49 C.J.S., Sec. 257, p. 473, it is said "* * * Where the motion is too broad, it may be denied in toto * * *", citing as authority Overbay v. Fisher, 64 Ind. A., 44, 115 N.E., 366, 367, 368, where the court stated:

"Furthermore appellants' motion to modify is dual in form. It contains a request to modify the findings and a request to modify the judgment and decree. If either of such requests should have been denied the court committed no error in overruling the motion.

"There was no request for a special finding in this case; therefore, the findings of the court above set out must be construed as a general finding. Katterhenry v. Arensman, 183 Ind. 347, 108 N.E. 101; Hinshaw v. Security Trust Co., 48 Ind. App. 351, 357, 93 N.E. 567. Appellants' remedy, if any, was by a motion for new trial, and not by motion to modify. The request to modify the findings should have been denied.

The defendant's motion here seeks special findings of fact which would modify the general finding made by the court in its judgment.

Under these circumstances, where the motion to clarify the judgment is confused with requests for special findings of fact which should properly have been made before the judgment's rendition, we are disposed to hold that there has been reversible error in the overruling of the motion. See First National Bank of Sherident v. Citizens' State Bank of Dubuque, Ia., et al. 11 Wyo. 32, 70 Pac. 726; Cottonwood Sheep Co. v. Murphy, 48 Wyo. 250, 44 Pac. (2d) 1000, 98 A.L.R. 1373; School District No. 1 v. Howard, et al, 49 Wyo. 41, 52 Pac. (2d) 421. In any event the motion was made much too late. It is unreasonable to expect that a busy district judge would for so long a time keep fresh in his mind

all the evidence necessary to enable him to adequately respond to the requests made. It should have been made instanter.

We can agree with appellant that the record does not contain any evidence to support a judgment upon the third cause of action in favor of the plaintiff Lucksinger, but it is equally clear that the court gave no judgment on Lucksinger's claim as set forth in this third cause of action. As the appellant admits in his brief "There is nothing in the judgment to indicate that it included any amount founded on the third cause of action in favor of Lucksinger." In consequence, this point needs no further consideration.

It is contended that there is a variance between the first two causes of action and the proof, because plaintiffs had alleged the hay was sold to the defendant for $20 per ton in the windrows, and plaintiff Lucksinger testified plaintiffs had also agreed to pile the hay in truckload lots after it had been baled. From this it is concluded the proof showed the agreement was not completed until after the bales had been piled. However, even if we agreed with the appellant's premise in this respect, it would avail him nothing inasmuch as he failed to comply with the provisions of Section 3-3201, Wyoming Compiled Statutes, 1945, which provides as follows:

"No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits, and when it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended, upon such terms as are just."

The record does not disclose that the defendant

either called the alleged variance to the court's attention, claimed he had been misled and prejudiced thereby or proved or offered to prove in what respect he had been so misled.

The appellant urges that there was an implied rescission of the original agreement by the making of a new inconsistent agreement with respect to the subject matter of the old contract, and that the latter agreement being verbal was within the statute of frauds and unenforceable against the defendant. The appellant admits that his acceptance of 22 tons of the hay, saved the original oral agreement from the statute of frauds, but says this enforceable agreement was abrogated by mutual consent and the acts of the parties, or that it was so modified by the arrangement to have the plaintiffs stack the hay rather than to have it baled from the windrows, that there was constituted a new and unenforceable agreement without the defendant doing anything to take the new oral agreement out of the statute of frauds. It seems proper to first consider whether or not the defendant is entitled to raise the statute of frauds in his behalf on this appeal, for if he may not there will be no point in discussing the matter.

The plaintiffs not only pleaded the terms of what the appellant calls the original oral agreement, which agreement the defendant concedes was rendered enforceable by the defendant's own acts, but also the terms of the oral modification of such original oral agreement during the course of its performance, which were that the plaintiffs should stack the remaining hay instead of leaving it in the windrows. Thus, the defendant was apprised of the whole of the oral agreement or agreements by virtue of which a recovery was being sought. Notwithstanding the defendant pleaded other affirmative defenses, he did not elect to plead the statute of frauds in defense of either the so-called

original oral agreement or the pleaded oral modification of the same. The defendant did however make general denial, which, of course, was equally applicable to all phases of the oral agreements, and under the holdings of this court in Williams-Hayward Shoe Company v. Brooks, et al, 9 Wyo. 424, 64 Pac. 342, and Davison, et al, v. Nicholson, 37 Wyo. 412, 263 Pac. 605, entitled the defendant to interpose the defense of the statute of frauds, *providing* the defendant made objection on that ground to the introduction of evidence offered to prove the oral agreements.

There is authority to the effect that a "Defendant does not waive the defense of the statute by failing to object to oral evidence offered to prove the agreement, when the offer of the oral evidence is one of the steps in the order of proof required by the statute, and is admissible, when followed by other evidence required, in order to take the agreement out of the statute" (37 C.J.S. 793, 794, Sec. 269), but here the statute is not offered to defeat what appellant calls the original oral agreement but is offered only to defeat what he calls a new or a modified agreement dealing with the method of delivering the 111 tons of hay not baled. To be consistent with the rulings made by this court in the cases cited above, if the defendant desired to avail himself of the statute to defeat the oral modification agreement, it was his duty to object, not to oral evidence offered to prove the original oral agreement and the partial acceptance of the hay by the defendant, but to the introduction of any evidence as to the delivery of the 111 tons of hay to the defendant in accordance with the oral mutual agreement which authorized this substituted method of delivery, on the grounds that such evidence was incompetent to prove a contract within the statute of frauds which was not alleged to have been brought within one of its exceptions.

In 37 C.J.S., Sec. 269, pp. 792, 793, it is said:

"Where plaintiff declares on an oral contract within the operation of the statute, and defendant either denies that he made the contract, or sets up another and a different agreement, or admits the oral agreement and pleads specially the statute, testimony offered to prove the oral contract is incompetent, and should be excluded, on objection.

"Where plaintiff pleads an oral contract and facts taking such contract out of the statute, he has the right to prove the oral contract, and the defense of the statute cannot be interposed by objecting to the evidence establishing an oral contract.

\* \* \*

"The objection to the evidence must be on the grounds of the statute, *and must be made in such manner as to call the trial court's attention to the reliance thereon.* (emphasis supplied)

\* \* \*

"\* \* \* by failing to object to the proof of an oral contract a party waives the benefit of the statute and cannot afterward claim it, where the statute was not otherwise properly raised, and even, it has been held, although the statute is insisted on in the answer."

\* \* \*

When it is kept in mind that the oral agreement the defendant is objecting to is not the oral agreement to sell and buy the hay, but to the oral agreement to stack the hay instead of leaving it in windrows, the wisdom of the rule that while the statute of frauds may be interposed under a plea of the general issue, the court's attention must in some manner be called to the fact that defendant relies on the statute for his defense becomes graphically apparent. This court has so held in Davison, et al v. Nicholson, 37 Wyo. 412, 416, 263 Pac. 605, 606, when it said:

"We therefore hold that, where the defendant in his answer denies the making of the contract pleaded by plaintiff without specially pleading the statute of frauds, he must, in order to avail himself of the benefits of the statute, in some manner object to the plaintiffs' proof of such contract and do this in a manner so as to call the trial court's attention to his reliance upon the statute of frauds."

And here, as was also noted in the case last quoted from, we have searched the record painstakingly and nowhere does it appear that the defendant relied in the trial court upon the statute.

What has been said is in the main applicable to the appellant's alternative contention that the oral agreement for the stacking of the hay, abrogated the original oral agreement and had effected its rescission. The defendant claims that the new oral agreement was so inconsistent with the original oral agreement, that the old agreement was abrogated and rescinded, and that although an enforceable oral agreement once existed, it was destroyed by the new agreement which was itself unenforceable because of the statute of frauds. However, when taking this position it was still necessary that the defendant make known to the court that he relied upon the statute of frauds to render unenforceable the new agreement.

Finally, the appellant says that there is no evidence upon which the amount of the judgment can be sustained. After eliminating from his consideration the third cause of action, the appellant notes that the theory of the first cause of action is that the property in the hay had passed to the buyer, while in the second cause of action the theory is that the property had not passed, and, then, he immediately concludes that under the facts the title to the hay had not passed to the buyer. As to this there is considerable doubt. As

authority for his conclusion, the appellant quotes from 46 Am. Jur. 591 a part of Section 422, to the effect that on a sale of personal property title does not pass while anything remains to be done to determine its quantity and price as by weighing, measuring or counting. However, in examining the section we find it further stated: *46 Am. Jur. Sec. 422, p. 592*

"* * * On the other hand, in a contract for the sale and delivery of an entire mass, the fact that there remains, in order to determine the aggregate price, a necessity that the subject matter be weighed, measured, or counted does not necessarily render the transaction executory. The rule generally accepted is that where the whole of a mass or bulk is sold with the intention at the time of passing the title, the fact that it is to be weighed, counted, or measured, to enable the parties to make a settlement and not for the purpose of completing the sale, does not prevent the title from passing as between the parties. Thus, in case of the sale of a standing crop, the fact that it is to be measured after it has been gathered in order to ascertain and fix the amount to be paid by the buyer does not prevent the title from passing at the time of the sale, if that is the intention of the parties. * * *"

And in Section 420, page 590 of the same volume, (46 Am. Jur.) it is also said:

"* * * It seems to be well recognized, under the modern decisions at least, that where the sale is of specific identified property the title may pass, if such is the intention of the parties, even though something remains to be done by the seller to put the property in its final condition or before the price becomes payable. Thus, in case of a sale of a growing crop, if the subject matter is identified, the fact that the crop is to be gathered by the seller does not prevent the title from passing at the time of the sale if such is the intention of the parties; * * *"

Both the pleading and the evidence in this case specifically identified the subject matter of the contract as

being all the hay produced from certain acres. Giving to evidence most favorable to the respondent the reasonable and proper inferences to which it is entitled, the court was justified in believing that it was the intention of the parties that title to the whole crop should pass to the buyer at the time of the sale (Dulaney v. Jensen, 63 Wyo. 313, 320, 181 Pac. (2d) 605; Willis v. Willis, 48 Wyo. 403, 429, 49 Pac. (2d) 670, 678; Northwest States Utilities Co. v. Brouilette, 51 Wyo. 132, 65 Pac. (2d) 223, 69 Pac. (2d) 623; Branson v. Roelofsz, 52 Wyo. 101, 70 Pac. (2d) 589; Horton v. Colbron, 60 Wyo. 263, 150 Pac. (2d) 315; Havens v. Irvine, 61 Wyo. 309, 157 Pac. (2d) 570, 159 Pac. (2d) 366; Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 Pac. (2d) 505, 177 Pac. (2d) 204, 169 A.L.R. 502) and we may assume that the lower court did conclude that it was the intention of the parties that the title should so pass, as the general finding is a finding of every special thing necessary to be found to sustain the judgment. (Nussbacher v. Manderfeld, 64 Wyo. 55, 64, 186 Pac. (2d) 548; Dulaney v. Jensen, 63 Wyo. 313, 320, 181 Pac. (2d) 605; Jacoby v. City of Gillette, 62 Wyo. 487, 510, 174 Pac. (2d) 505, 177 Pac. (2d) 204, 169 A.L.R. 502; Wallis v. Nauman, 61 Wyo. 231, 238, 157 Pac. (2d) 285; Hinton v. Saul, et al, 37 Wyo. 78, 96, 259 Pac. 185.) In consequence, it may not be said that under the evidence in the case the trial court could not properly determine that the title to the hay had passed to the buyer.

Attacking the judgment on the theory it was rendered on the second cause of action—that is, on the assumption that the title in the hay had not passed, the appellant says that the measure of damages being the difference between the contract price and the market price at the time of defendant's refusal to accept delivery of the hay, the plaintiffs failed in their duty to

make reasonable effort to dispose of the hay to prevent accumulation of damages after being notified by defendant that he would not accept the hay and, therefore, plaintiffs should be bound by the defendant's testimony as to the market value of the hay at the time of his refusal to accept the same. Assuming first that the contract was executory and, second, that the plaintiffs did have a duty to dispose of the hay which they failed to perform, there is no rule of law known to this court nor does the appellant cite any authority that holds that the plaintiffs were, therefore, bound by defendant's testimony as to market value of the hay.

There was a serious conflict in testimony as to the number of tons of hay produced, which controversy involved the formula or method used to compute the tonnage, and there was other conflict in testimony as to the market value. Both of these matters required a determination of fact. As was said by this court in Swanson v. Johnson, 58 Wyo. 1, 8, 122 Pac. (2d) 423, 424:

"Neither the plaintiff nor the defendant makes it clear to us just how the trial court arrived at the judgment given. The plaintiff is not here complaining of the result, and, of course, the burden of showing that the district court committed error in its disposition of the questions of fact involved in the case and in its judgment rendered thereon rested upon the appealing party. * * *"

The appellant stresses his inability to explain to this court in just what way the trial court erred in arriving at the amount of the judgment given, but "guesses" that the court took the difference between the amount claimed by the plaintiffs—$2,220.00—and the amount actually received for the hay—$1,368.00—which difference is $852.00, and an even $100 more than the amount for which judgment was rendered, and appel-

lant suggests the explanation that the court might have inadvertently miscalculated the difference by the amount of this discrepancy. If this is the explanation, the error is in the defendant's favor and the plaintiffs make no complaint. Whether or not this was the method of calculation used by the court, the evidence construed most favorably to the benefit of the plaintiffs certainly warranted the court's use of the same, and we will not substitute any conclusions of our own to supplant what may have been a justified finding by the trial court.

In summary then let us say, we hold that the suggested variance does not warrant either a reversal or modification of the judgment, principally because the same was not asserted in the manner required by statute; that the judgment is responsive to the pleadings of the first and second causes of action; that there was no evidence to sustain a judgment in favor of the plaintiff, M. B. Lucksinger, on the third cause of action, and that no such judgment was rendered; that the statute of frauds—although not pleaded specially—was nevertheless under his general denial available to the defendant in defense of plaintiffs' first and second causes of action, but that by his failure to call to the court's attention in some proper manner during the trial of the case that he was relying upon the statute as a defense, the defense of the statute was lost to the defendant and, finally, that the appellant has failed in his burden to show to this court wherein the trial court erred in applying the measure of damages in making and rendering its judgment.

*The judgment as rendered is, therefore, affirmed.*

BLUME, C. J. and RINER, J., concur.

## ON PETITION FOR REHEARING

(No. 2572; December 8th, 1953; 264 Pac. (2d) 1007)

## OPINION ON REHEARING

HARNSBERGER, Justice.

Appellant's petition for rehearing takes exception to a portion of the opinion previously rendered, which stated:

"There was a serious conflict in testimony as to the number of tons of hay produced, which controversy involved the formula or method used to compute the tonnage, and there was other conflict in testimony as to the market value. Both these matters required a determination of fact."

It is claimed this was erroneous because—

"(a) There is no conflict in the evidence as to the number of tons of hay produced. The only evidence in that regard was that of plaintiff Temple's testimony as to the measurements of the stacks.

"(b) The only controversy in regard to the number of tons of hay was the application of the proper rule for determining the weight of the stacks which is essentially a question of law not fact."

Perhaps counsel overlooked the defendant's testimony wherein he said in substance that when the hay was measured (by Temple) "it was given a long tape"; that the stacker used was one for which 15 tons would be a large stack; that Temple's measurements would make stacks averaging 18⅔ tons which was "far in excess by two or three tons per stack" of the stacks previously made with the same stacker, and that he could not see how it was possible to "wad eighteen and two-thirds tons into stacks with that size stacker."

Although this disputed the Temple testimony, we properly assumed that the court accepted the testi-

mony most favorable to the plaintiff, and so stated in the original opinion. This evidence showed the measurements to be as follows:

|  | L. | W. | O. |
|---|---|---|---|
| South No. 1 | 26 | 23.5 | 48 |
| North No. 2 | 26.5 | 27.5 | 50 |
| Lone No. 3 | 27 | 23. | 48 |
| East No. 4 | 25.5 | 22.5 | 48 |
| South No. 5 | 21.5 | 18.5 | 39.5 |
| North No. 6 | 23.5 | 23.5 | 47.5" |

However, as counsel now points out, to accept the plaintiffs' measurements does not completely dispose of the question as to how much hay was produced, for there was still to be determined whether or not the proper formula was adopted by the court to compute the tonnage. The plaintiffs admitted there was no special agreement to use any particular method to calculate the weight, and the hay was shown to be clean timothy and clover and was measured shortly after it had been in stack 30 days, so the governing provision of our statutes applicable in this case is as follows:

*Section 39-1011, Wyoming Compiled Statutes, 1945.*

"* * * Unless otherwise agreed to between the contracting parties, the following shall constitute the legal measurement for hay in stack in the state of Wyoming: * * * Four hundred and fifty (450) cubic feet shall constitute a ton of clean timothy and clover, after the same shall have been in the stack thirty (30) days, and up to one (1) year. For making measurements of hay in stack, the following is hereby made the legal method of measurement, to-wit: The width and length of the stack shall be measured, and the distance from the ground against one side of the stack to the ground against the other side of the stack, directly over and opposite, shall be taken in linear feet and inches, and then the width shall be subtracted from the measurement over the stack, as above indicated, the result divided by two (2), and the result so obtained multiplied by the width, and the result thus obtained multi-

plied by the length, which will give the number of cubic feet contained in the stack, and the tonnage shall thereupon be determined by dividing the total number of cubic feet by the number of cubic feet allowed under the provisions of this section for a ton."

Applying this statutory formula to the measurements given above gives us 93.156 tons of hay, which at $20 per ton—which we must again assume the court found to be the cost or value of the hay—made it worth $1,863.12   Deducting from this amount the $1,368 received by plaintiff from the sale of the hay, a balance remains of $495.12, which is the amount for which, under the law and the evidence, judgment should have been given, instead of the $752 awarded by the court.

Having arrived at the above conclusion, it is unnecsssary that the rehearing be granted, and the same is, therefore, denied.

Because of what has been said, if within thirty days after this decision is handed down, the plaintiffs will file in this court a consent to accept judgment as of June 9, 1952 for the sum of $495.12 and costs, which is to say, for 93.156 tons of hay at $20 per ton, less $1,368 already received from the sale of the hay, being a reduction of $256.88 from the original judgment of $752, then the judgment herein as so modified will be affirmed.  If such a consent is not filed, the judgment as rendered by the court below must be reversed and remanded for a new trial.  An order to the foregoing effect will be entered.

*Denied.*

BLUME, C. J. and RINER, J. concur.