Larry ROMBERGER, d/b/a Southwest Bingo Supplies, Appellant (Plaintiff),

v.

VFW POST 1881, Appellee (Defendant/Third Party Plaintiff),

and

Bronco Bingo, Inc., a Wyoming Corporation, and Ken Runion, Appellees (Third Party Defendants).

VFW POST 1881, Appellant (Defendant/Third Party Plaintiff),

v.

Larry ROMBERGER, d/b/a Southwest Bingo Supplies, Appellee (Plaintiff).

Nos. 95–115, 95–116.

Supreme Court of Wyoming.

June 25, 1996.

Billie Ruth Edwards of Edwards & Johnson, Cheyenne, for Larry Romberger, d/b/a Southwest Bingo Supplies.

W.A. Swainson, Cheyenne, and Philip White, Jr., Laramie, for VFW Post 1881.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Filing in its capacity as a charitable organization, VFW Post 1881 obtained a gaming permit from the City of Cheyenne to operate a bingo and pull tab enterprise. Through various agreements, VFW Post 1881 engaged the services of Bronco Bingo, Inc. to finance and conduct the business. Bronco Bingo, Inc., in turn, purchased their supplies from Larry Romberger. The venture failed and the participants fell upon each other in a most uncharitable fashion. Larry Romberger sued VFW Post 1881 for the cost of those supplies, whereupon VFW Post 1881 sought to implead Bronco Bingo, Inc. Finding a belated, prospective guarantee, the district court ordered VFW Post 1881 to partially reimburse Larry Romberger. Larry Romberger appealed. We affirm the district court in Case No. 95–115 and dismiss Case No. 95–116 as untimely.

## I. ISSUES

In Case No. 95–115, appellant, Larry Romberger, d/b/a Southwest Bingo Supplies (Romberger), states a single issue:

1. Did the lower court err in not finding VFW Post 1881 solely responsible under Wyoming gaming laws for the gaming supplies purchased by Bronco Bingo from Larry Romberger dba Southwest Bingo Supplies?

Appellee, VFW Post 1881, chose not to state issues in Case No. 95–115 as permitted by W.R.A.P. 7.02.

## II. FACTS

Notwithstanding the City of Cheyenne's issuance of a 1989 gaming license to "VFW Post 1881 d/b/a Bronco Bingo," VFW Post 1881 denies intent to become an active participant in the bingo operation. Initially, VFW Post 1881 tried profit sharing with a gaming operator. To preserve appearances of propriety, VFW Post 1881 later entered into an employment contract and agreement with Bronco Bingo, Inc.

Eventually, the contract and agreement involved VFW Post 1881 and Bronco Bingo, Inc., as operated by successor in interest Ken Runion (Runion). A purveyor of gaming devices and equipment, Romberger sold bingo supplies to Bronco Bingo, Inc.

Checks issued by Bronco Bingo, Inc. required three signatures—those of Runion and two VFW Post 1881 officials. However, VFW Post 1881 representatives routinely signed blank checks for free use by Runion. In addition, Romberger and Runion eschewed standard reimbursement procedures, choosing "to do a little side deal and some invoices were torn up[.]" Bronco Bingo's bookkeeper testified:

> Mr. Runion would tell me that he had some dealings with Mr. Romberger and that if they panned out that it would wipe clean all the debt that he had with Mr. Romberger. After they were together, you know, they would come in and say these invoices or so much amount of dollars would be torn up and that that was considered paid in full. Mr. Runion never would give me a directive as to how I was to handle that in the books. So it was just left that basically some of the merchandise was brought in and was never paid for.

Romberger neither alleged nor demonstrated any contractual arrangement with VFW Post 1881 or Bronco Bingo, Inc. However, at some point in October of 1989, Romberger refused to deliver supplies until payment was guaranteed. At that time, Reuben Altergott, a VFW Post 1881 officer, stepped in to guarantee VFW Post 1881 payment for the supplies. Since the date of that guarantee could not be pinned down, the district court awarded Romberger the value of supplies delivered in the months following October, to be paid by VFW Post 1881 and Runion, the latter being noteworthy only for his non-appearance.

Judgment was entered on March 22, 1995. On April 21, 1995, Romberger filed a timely notice of appeal in Case No. 95–115. On May 9, 1995, eighteen days after Romberger filed his notice of appeal, VFW Post 1881 attempted to file both a cross appeal and a third party plaintiff's appeal.

## III. STANDARD OF REVIEW

 Relying upon the "cold record of the trial," we are seldom inclined to disturb a district court's decisions regarding witness credibility. *Matter of SKJ*, 673 P.2d 640, 642 (Wyo.1983). Where testimony is conflicting, the finding of the trial court should not be disturbed, unless such finding is against the great weight of the evidence and clearly erroneous. *Hillard v. Marshall*, 888 P.2d 1255, 1260 (Wyo.1995); *Williams v. Yocum*, 37 Wyo. 432, 444, 263 P. 607, 611 (1928). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court *on the entire evidence* is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) (quoted with approval in *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993)) (emphasis added). It is appellant's burden to show that the district court erred, either in determination of facts or the judgment rendered. *Hopper*, 861 P.2d at 538; *Lucksinger v. Salisbury*, 72 Wyo. 164, 183, 262 P.2d 396, 403 (1953). Finally, failure to file a timely appeal necessitates dismissal. W.R.A.P. 1.03 and 2.01. *See Miller v. Murdock*, 788 P.2d 614, 616 (Wyo.1990) (decided under old rules).

## IV. DISCUSSION

The cornerstone of Romberger's argument is that VFW Post 1881, d/b/a Bronco Bingo, and Bronco Bingo, Inc., under the guidance of Runion, were a joint venture. Under this theory, VFW Post 1881 would be liable for all supplies purchased by Runion.

 Joint ventures may be inferred from the conduct of the parties, their transactions and the surrounding circumstances, but always include a promise to share in both the profits and losses occasioned by the endeavor. *True v. Hi–Plains Elevator Machinery, Inc.*, 577 P.2d 991, 997 (Wyo.1978). Additionally, each party must have "an equal voice in control and direction of the undertaking." *Hill v. Zimmerer*, 839 P.2d 977, 981 (Wyo.1992). Existence of a joint venture is "preeminently a question for the finder of fact[.]" *Id.* at 982 (*citing Robinson Transp. Co. v. Hawkeye–Security Ins. Co.*, 385 P.2d 203, 205 (Wyo.1963)).

 The contract afforded Runion ninety percent of the *net* profits. While the district court found "no agreement to share equally in the profits and losses and * * * no equality of operational control," the conclusion is inescapable that there was no agreement to share losses in any ratio. There was no joint venture.

 The district court found a clear and definite promise by Reuben Altergott on behalf of VFW Post 1881 to pay Romberger for supplies; that Romberger relied upon that promise to deliver further bingo supplies; and, that the equities of the transaction support enforcement of that promise for supplies delivered in November and December of 1989. Thus formulated, the theory supporting limited recovery by Romberger is that of promissory estoppel. *See, e.g., Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293, 1298 (Wyo.1995) and cases cited therein.

Limited recovery is consistent with theoretical underpinnings of promissory estoppel. Recovery is not a matter of contract, but is predicated on the promisee's change in position, to his detriment, as a consequence of the promise made. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267, 276–77 (1965). The amount of recovery is a question intertwined with the equities of the transaction, necessarily creating a policy question to be decided by the court in the exercise of its discretion. *Id.* 133 N.W.2d at 275. Here, the district court could not ascertain when in October of 1989 the promise was made, and therefore decided it should be binding only for those months following October. The result is well within the discretion of the district court and an appropriate distribution of the equities of the transaction.

With respect to case No. 95–116, VFW Post 1881's notice of appeal was filed eigh-

teen days outside the thirty days allowed by W.R.A.P. 2.01(a) for direct appeals. As a cross appeal, the notice was filed one day outside the fifteen days within the first notice of appeal afforded by W.R.A.P. 2.01(a)(ii). No effort was made to show excusable neglect and we find none in the record. Case No. 95–116 is dismissed.

## V. CONCLUSION

The judgment of the district court in Case No. 95–115 is affirmed in all respects. Case No. 95–116 is dismissed as untimely filed.